**WOLF, Dorothy, G.**

**v.**

**NATIONAL SHOPMEN PENSION FUND; Shopmen's Local 548; Gehringer, Richard H.**

**Appeal of NATIONAL SHOPMEN PENSION FUND.**

**No. 83–1033.**

United States Court of Appeals, Third Circuit.

Argued Oct. 24, 1984.

Decided Feb. 17, 1984.

Petition for Rehearing and Rehearing In Banc Denied March 1, 1984.

Stephen C. Richman, argued, Andrew L. Markowitz, Markowitz & Richman, Philadelphia, Pa., for appellant.

Thomas F. Traud, Jr., argued, Roberts, Traud, Wallitsch & Corkery, Allentown, Pa., for appellee.

Before GIBBONS, GARTH and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This case involves the National Shopmen Pension Fund's appeal of a district court order granting the plaintiff Dorothy G. Wolf's claim to pension benefits as the designated beneficiary of her deceased husband. This claim was denied by the Trustees of the Pension Fund. Because we believe that the Pension Fund's denial was arbitrary and capricious, we will affirm the district court order granting those benefits.

### I.

Plaintiff's deceased husband, William G. Wolf, was employed by Lehigh Structural Steel Company ("the Company") for over 40 years. He suffered two heart attacks in January and February of 1978. His last day of work was January 26, 1978. Prior to January, 1978, Wolf was an active employee of the Company and a member of the local union. In the summer of 1978, Wolf and members of his family had several meetings with Richard H. Gehringer, the President of the local union, concerning potential benefits payable to Mr. Wolf as a participant in the National Shopmen Pension Fund ("the Pension Fund").

The Pension Fund is a jointly administered trust fund established pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (1976). The Pension Fund is administered by a Board of Trustees embracing an equal number of employer and union representatives. In administering the Pension Fund, the Board of Trustees must comply with the Rules and Regulations of the National Shopmen Pension Plan ("Pension Plan" or "the Plan").

In August of 1978, Mr. Wolf completed a pension application on a form provided by the Pension Fund. On the second page of the application Wolf signed a "WAIVER OF SPOUSE'S 50% PENSION OPTION." On December 1, 1978, the Acting Fund Administrator, on behalf of the Trustees, wrote to Mr. Wolf advising him that his application for a disability pension was approved; however, Mr. Wolf had died on November 22, 1978. Because Mr. Wolf's disability pension application contained this signed Waiver of Spouse's 50% Pension Option, the Fund advised Mrs. Wolf that she was entitled to no pension benefits following the death of her husband. Instead, Mrs. Wolf was entitled only to receive an amount covering the period between submission of the pension application and its approval by the Board of Trustees. This amount was $304.00 a month for the already passed months of August, September, October and November of 1978 for a total of $1,216.00.

On September 21, 1979, Mrs. Wolf filed suit against the Pension Fund, Shopmen's

Local Union 548 ("Local Union"), and Richard H. Gehringer, the Union's President, in Pennsylvania State Court. Mrs. Wolf alleged in her complaint that Mr. Gehringer, acting as an agent of the Pension Fund, negligently failed to process properly the pension application form executed by her husband. Mrs. Wolf did not contend that the Pension Fund itself was independently guilty of negligence or bad faith in its handling of the application. On October 2, 1979, the suit was removed to the United States District Court for the Eastern District of Pennsylvania. The defendants moved for and were granted summary judgment because Mrs. Wolf had not exhausted internal union remedies by failing to request a hearing under Section 7.04 of the Plan. 512 F.Supp. 1182.

Mrs. Wolf returned to the Pension Fund to exhaust internal union remedies pursuant to Section 7.04. The Trustees considered the merits of Mrs. Wolf's appeal of the Pension Fund's denial of pension benefits unpersuasive; and therefore, it denied her claim in an undated opinion.

Having sought and been denied the additional pension benefits by the Pension Fund pursuant to the Plan's internal union appeals procedure, plaintiff again instituted an action in federal district court. As before, she sought what she had been denied—the pension benefits to which she would have been entitled, if the Pension Fund had *not* considered Mr. Wolf's waiver of spouse's 50% pension option effective.

Pursuant to the rules of the district court, arbitrators considered this dispute and, on November 22, 1982, entered an arbitration award in favor of the plaintiff, but only against the Pension Fund. The Local Union and Richard Gehringer defeated plaintiff's claim against them. The arbitrators found that the waiver signed on page two of the application was ineffective to eliminate a payment to the plaintiff of 50% of the amount Mr. Wolf would have received had he not elected to execute the waiver. The arbitrators also held, however, that they were unable to arrive at a precise figure because the evidence presented did not enable them to do so.

The plaintiff appealed the arbitrators' decision to the district court. In a sound opinion mindful of its limited scope of review of the Pension Fund's determination, the district court found in favor of Mrs. Wolf and against the Pension Fund; the district court agreed with the arbitrators that the waiver executed by Mr. Wolf was ineffective. The district court also found in favor of the union and Mr. Gehringer. Because the record before the district court was complete, it was able to determine the dollar amount of plaintiff's award against the Pension Fund. The defendant Pension Fund now appeals from the order of the district court finding it liable to Mrs. Wolf.

The Pension Fund claims first, that plaintiff's claim is not within the jurisdiction of the federal courts because plaintiff failed to exhaust internal union remedies and second, that the waiver executed by plaintiff's husband was effective.

## II.

Federal jurisdiction over this type of claim is based on Section 502(a), 29 U.S.C. § 1132(a) (1976), the civil enforcement provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1381 (1976). Section 502(a) provides, in pertinent part, that

"[a] civil action may be brought—(1) by a participant or beneficiary—(B) to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan . . . ."

29 U.S.C. § 1132(a)(1)(B). However, the federal courts have generally not entertained such an action where the party bringing the action has failed to exhaust administrative remedies. *See Kross v. Western Electric Co., Inc.,* 701 F.2d 1238 (7th Cir.1983); *Challenger v. Local Union No. 1 of the International Bridge, Structural and Ornamental Iron Workers,* 619 F.2d 645 (7th Cir.1980); *Amato v. Bernard,* 618 F.2d 559 (9th Cir.1980).

Indeed, the district court dismissed plaintiff's initial action because she had failed to exhaust internal union remedies, specifically, Section 7.04 of the Plan's internal appeals procedure which provides in pertinent part:

A Participant whose application for benefits under this Plan has been denied, in whole or in part, is to be provided with adequate notice in writing setting forth the specific reasons for such denial, and shall have the right to appeal the decision, by written request filed with the Trustees within 180 days after receipt of such notice. The appeal shall be considered and decided by the Trustees. The decision shall be communicated to the claimant within 90 days after receipt of all pertinent evidence.

Appendix ("App.") at 44a. The plaintiff cured this defect, however, by appealing to the Pension Fund pursuant to Section 7.04 of the Plan. In that appeal she requested the Board of Trustees to correct the claimed error of having approved Mr. Wolf's application for a disability pension. That request was denied. It was only after Mrs. Wolf had been denied by the Pension Fund the additional benefits she sought that she initiated the second action before the district court.

■■■ Although defendant concedes that Mrs. Wolf "did ultimately appeal to the Trustees pursuant to this procedure," it contends that "plaintiff never raised any issue during her appeal concerning the validity of the waiver executed by her husband of the spouse 50% option." Brief for Appellant at 18. Thus, defendant concludes plaintiff should not be permitted to proceed on the alternative theory that the 50% waiver was ineffective because it would strip from the Trustees "the opportunity to resolve disputes concerning a participant's rights to pension benefits." *Id.* at 18–19. We disagree with the defendant Pension Fund's argument and conclusion. Because plaintiff, pursuant to section 7.04, submitted the appeal to the Board of Trustees who acted upon and denied her appeal, we conclude that she exhausted her internal union remedies.

Section 502(a) of ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion. 29 U.S.C. § 1132(a). The Pension Fund cites no case, nor are we aware of any case which holds that a district court cannot decide a claim relying on a theory different from that presented to the Trustees of a Pension Fund. All of the cases with which we are familiar concern themselves only with whether the internal union remedies have been exhausted before finding federal jurisdiction appropriate.

In this case, the Trustees were presented with plaintiff's claim to the pension benefits to which her husband would have been entitled but for the Pension Fund's finding that the "Waiver of Spouse's 50% Pension Option" was effective. They had an opportunity to consider fully this claim and resolve this dispute. Plaintiff's claim has been consistent throughout this case. She should not be denied our consideration of this claim simply because she relies on an alternate theory—that the waiver executed by her husband was by its own terms inoperative, and therefore she is entitled to 50% of her husband's pension benefits from the time of his death to the time of her death. The arbitrators first recognized this theory during the arbitration hearing in November, 1982. They relied on it in their decision. They recognized that if Mr. Wolf was an employee of Lehigh Structural Steel prior to his death, as the defendant Pension Fund argued throughout the proceedings below, the waiver of the 50% spousal option was ineffective. The district court also based its finding in favor of plaintiff on this theory.

We believe our jurisdictional inquiry should not be focused on the theory on which the district court decided plaintiff's claim. Instead, the focus of our inquiry must be whether the plaintiff exhausted her internal union remedies. In this case she did exhaust the only internal union remedies available to her; Mrs. Wolf gave the Trustees the opportunity to decide whether her claim to pension benefits was

meritorious. The Trustees decided with finality that her claim lacked merit. Therefore, under 29 U.S.C. Section 502(a), plaintiff has the right to appeal this final decision to the federal courts. Having decided that we have jurisdiction we turn now to the merits of plaintiff's claim.

## III.

■ The scope of review of a decision by the trustees of a pension fund is narrow; it "is limited to a determination of whether the trustees' actions were arbitrary and capricious." *Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592, 596 (3d Cir.), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). As the reviewing court, we must determine whether the challenged decision resulted from a "consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). In short, unless we can find that the challenged decision is not "rational," we must uphold the decision of the Pension Fund. *Federal Communications Commission v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 803, 98 S.Ct. 2096, 2116, 56 L.Ed.2d 697 (1978).

The specific question before us is whether the Trustees' decision was arbitrary and capricious. The Trustees held that Mrs. Wolf's deceased husband's disability pension application waived her right to the 50% spousal pension benefits—a right to which she otherwise would have been entitled. We believe that this decision was arbitrary and capricious.

■ We begin our analysis with Section 3.09 of the Plan entitled "Amount of Disability Pension." It reads in pertinent part:

The Disability Pension shall be a monthly amount equal to the Early Retirement Pension to which the Participant would be entitled based on his age and years of Credited Service on the effective date of his Disability Pension, increased by 10%. If the Participant is under age 55 on the effective date of his Disability Pension, it

shall be assumed that he has attained age 55 for the purpose of calculating the amount of the Disability Pension. *The benefit payable shall be actuarially reduced to the amount provided under a Husband-and-Wife Pension whereby 50% of such monthly amount will be continued, after his death, to the Qualified Surviving Spouse, unless another form of pension benefit is elected under the provisions of Article 6.*

App. at 35a (emphasis added). This provision clearly requires the election of an alternative scheme provided in Article 6 before the waiver of the Husband-Wife Pension scheme under disability pension is effective. In this case Mr. Wolf elected no option provided in Article 6. Consequently, by the express mandate of Section 3.09 Mr. Wolf's waiver was not effective. Therefore, Mrs. Wolf is entitled to 50% of the monthly pension to which Mr. Wolf was entitled. Section 3.09 is but one basis for our finding the Trustees' decision giving effect to the waiver to be arbitrary and capricious.

■ A second way to demonstrate the egregious error in the Trustees' determination begins with the pension application itself. The critical waiver section reads:

Complete and sign this section only if you are applying for a Regular, Reduced, Early or Disability Pension AND YOU WISH TO REVOKE THE AUTOMATIC COVERAGE UNDER THE SPOUSE'S 50% PENSION OPTION.

*Id.* at 81a. It is undisputed that Mr. Wolf applied for one of the enumerated pensions—disability—and that he both completed and signed the waiver. However, this waiver is qualified by a provision above the applicant's signature which states:

"1. I understand this waiver becomes operative on the *effective date of my retirement benefit* under the rules of the Plan."

*Id.* (emphasis added). Thus, this provision raises the question whether the Plan distinguishes between disability pension benefits and retirement benefits. If it does, and if Mr. Wolf had reached only the effective

date of a disability benefit, but not a retirement benefit, it would be arbitrary and capricious to find the 50% spousal waiver effective as to the retirement benefit.

We believe that the Plan does distinguish between disability benefit and retirement benefit by its express terms. First, in Section 3.09 the Plan speaks in terms of the "effective date of his Disability Pension." *Id.* at 35a. Second, Section 3.12 entitled "Effect of Recovery by a Disability Pensioner," states that

> [i]f a Disability Pensioner loses entitlement to his Social Security Disability Benefit *prior to attainment of age 65,* such fact shall be reported in writing to the Board of Trustees within 21 days of the date he receives notice from the Social Security Administration of such loss. If such written notice is not furnished, he will, *upon his subsequent retirement,* not be eligible for benefits for a period of six months following the date of *his retirement. . . .*

*Id.* at 35a–36a. Reading Sections 3.09 and 3.12 together, it is undeniably clear that the Plan distinguishes between the effective date of a disability pension and the effective date of retirement.

Even the defendants recognized that a disability pensioner may receive disability pension as an active employee, but an active employee may not also receive a retirement benefit. Therefore, a person receiving disability benefits need not be considered a recipient of retirement benefits. Thus, the district court noted, that "[t]he Fund acknowledges that William G. Wolf never retired." *Id.* at 74a. In its answer to plaintiff's complaint, the Fund indicated that "William G. Wolf was an employee of Lehigh Structural Steel prior to his death in November, 1978." Defendants' Answer to Complaint, *Id.* at 20a.

Consequently, it was not rational for the Trustees to conclude that Mr. Wolf effectively waived the 50% spousal option where the waiver takes effect at retirement and the defendants admitted that Mr. Wolf was still an employee at the time of his death. Individuals receiving retirement benefits simply are not employees. Moreover, by the waiver's express terms waiver becomes effective only on the date of retirement, and Mr. Wolf did not retire. Therefore, we hold that it was arbitrary and capricious for the Pension Fund to deny Mrs. Wolf the 50% spousal benefits.

■ There is still another reason for not considering the waiver operative at the time of Mr. Wolf's death. Section 5.09 of the Rules and Regulations of the Pension Plan provides:

> *Benefit Payable In Lieu of Husband-and-Wife Pension Form.* In those instances where the Husband-and-Wife Pension is not effective, or the Participant signs an election form indicating his desire to waive the Husband-and-Wife Pension, he shall be entitled upon retirement to receive the monthly benefits provided for the remainder of his life, except that, if the Participant dies before receiving 60 monthly payments, his benefit will continue to be paid to his designated Beneficiary until a total of 60 payments have been paid to the Participant and his Beneficiary. However, if an optional form of pension has become effective in accordance with Article 6, any payment after the pensioner's death will be made in accordance with that optional form. *If the pensioner was receiving a disability pension, the 60-month guarantee shall not apply.*

App. at 42a. (emphasis added).

The district court's analysis focuses on the last sentence of Section 5.09. It compares the effect of Mr. Wolf's election of a disability pension with the effect of his having elected an early retirement pension. The election of a disability pension offers no protection to the widow pursuant to Section 5.09 for the premature death of her husband *i.e.,* before 60 months of benefits have been received. The election of an early retirement pension and the effective execution of the waiver of a spouse's 50% pension would protect the widow under Section 5.09 in the event of the premature

death of her husband by guaranteeing that a minimum of 60 payments be made.[1]

Section 5.09 was thus intended to protect a retiree exercising the 50% spousal option by guaranteeing payment of at least 60 monthly payments to the retiree and his spouse. Yet, this protection is expressly not applicable to a disability pensioner such as Mr. Wolf. This is additional evidence of the distinction between disability pension and retirement pension contemplated by the Pension Fund. To hold that Mr. Wolf waived his spousal option under pension terms that precluded an alternative form of provision for his wife and that excluded him and his wife from the 60-month protection guarantee is not only arbitrary and capricious, but also an unjust and unacceptable result. We therefore agree with the district court that the "waiver does not become operative while a participant is receiving disability benefits before he retires." App. at 75a.

### IV.

For the above reasons, we will affirm the order of the district court in favor of Dorothy G. Wolf against National Shopmen Pension Fund in the amount and with the directions contained in that order.

GARTH, Circuit Judge, dissenting:

The district court in this case resolved the controversy at issue by reaching and deciding a question never raised by Mrs. Wolf before the Pension Fund Trustees. By so doing, it usurped the Trustees' right to interpret the pension plan in the first instance. Unfortunately, the majority here has endorsed that same approach. Thus, to this date the Trustees of the Fund have yet to consider or have presented to them the very issue of waiver that has now been deemed dispositive of Mrs. Wolf's claims.

Had Mrs. Wolf claimed before the Trustees that the waiver of the 50% husband-wife option was inoperative under the terms and regulations of the Pension Plan

due to her husband's status as an *active* (as distinct from retired) employee at the time of his death, and had that interpretation of the Plan been available for consideration and attention by the Trustees, we might have a very different case before us.

Of even greater importance is that by condoning a relaxation of internal exhaustion requirements, and by permitting a claimant such as Mrs. Wolf to bypass procedures designed to avoid dispute resolution in the courtroom, we will be encouraging other claimants in similar contexts to do the same. In an era when we are desperately seeking out alternative forms of resolving disputes, it appears unwise and improvident to me to ignore the very mechanism for resolving the dispute in this case expressly provided for by this agreement. For this reason, I respectfully dissent.

### I

The facts of this case are not disputed. Mr. Wolf executed his application for disability pension benefits on July 11, 1978, and it was filed thereafter by Mr. Richard Gehringer, President of the Local Union. The Pension Fund office received Wolf's application for a disability pension on June 14, 1978. That office responded to Wolf that same day, acknowledging receipt of his application and requesting that Wolf obtain and forward the required verification of his disability status from the Social Security Administration.

On September 12, 1978, the Pension Fund received a letter from Mr. Gehringer, the Union President, enclosing the requested Social Security Award Certificate. Two days later, the Fund Administrator wrote to Mr. Wolf to acknowledge receipt of the award certificate in connection with his application for his disability pension. On December 1, 1978, the Fund Administrator notified Mr. Wolf by letter that his application had been approved effective August 1, 1978. However, Mr. Wolf had died on No-

[1.] The effective execution of the waiver enables the recipient to avoid having his monthly benefit actuarially reduced as it otherwise would be.

By signing the waiver Mr. Wolf would receive on the effective date of retirement a monthly benefit of $304.80 instead of $197.60.

vember 22, 1978. Payments were made for the months of August through November, 1978 only, since Mr. Wolf had elected to waive the spouse 50% option provision [1] and the Plan did not otherwise provide for the payment to the surviving spouse of any disability benefits upon the pensioner's death.

Mrs. Wolf brought suit in the Pennsylvania Court of Common Pleas in 1979. She alleged that her husband had *intended* to select an early *retirement* pension (with a guaranteed 60-month option), but Mr. Gehringer, the Union President, had negligently completed her husband's pension application. His negligence, she charged, was in applying for a *disability* pension and in waiving the spouse 50% option. That court action was removed by the defendants to the district court for the Eastern District of Pennsylvania, where the district court judge granted summary judgment for the defendants on the ground that Mrs. Wolf had failed to exhaust the fund's internal appeals procedure and the internal union remedies also available to her.[2] *See Wolf v. National Shopmen Pension Fund,* 512 F.Supp. 1182, 1183–84 (E.D.Pa.1981).

Mrs. Wolf thereafter filed an appeal with the Trustees of the Fund. Although the requisite 180-day filing period for appeals had expired, the Trustees nevertheless agreed to consider her appeal on the merits. Mrs. Wolf repeated the same argument she had made before the district court—that Mr. Gehringer had made an error in completing the form for Mr. Wolf—and she made no other arguments. The Trustees denied her appeal based on their finding that "Mr. Wolf made a deliberate and calculated decision to apply for a Disability pension and to waive the husband-wife pension option." App.14a.

On June 23, 1982, Mrs. Wolf commenced this action against the defendants, again arguing that Mr. Gehringer's error had thwarted her husband's intended pension selection. The district court denied defendants' motion for summary judgment without opinion, and the matter was submitted to arbitration according to local court rules. An arbitration award entered on November 22, 1982, found for Mrs. Wolf against the Pension Fund, and for the Local Union and Mr. Gehringer against Mrs. Wolf. Both Mrs. Wolf and the Fund appealed. On December 22, 1982, the district court entered judgment in accordance with the arbitration award: the district court issued an Opinion and Order entering judgment for Mrs. Wolf against the Fund, and in favor of the Local Union and Mr. Gehringer against Mrs. Wolf. The district court found that Mr. Gehringer was *not* negligent with regard to filing the pension application (App. 71a), thereby rejecting Mrs. Wolf's main claim. However, the court went on to consider an alternative theory first raised by Mrs. Wolf before the arbitrators, that under the terms of the Plan, Mr. Wolf's purported waiver of the 50% husband-wife option was ineffective. The court concluded, "after a careful review of the Rules and Regulations of the Fund and the other evidence in this case that the waiver was not operative and the plaintiff is entitled to a recovery albeit reduced." (App. 74a).

## II

The Pension Plan provides that "[a] pension must be applied for in writing filed with the Trustees in advance of its effective date." Section 7.01; App. 43a. The Plan further provides that

[a] Participant whose application for benefits under this Plan has been denied, in whole or in part, is to be provided with adequate notice in writing setting forth the specific reasons for such denial, and *shall have the right to appeal the decision, by written request filed with the*

---

1. The waiver of the 50% spouse option resulted in a greater disability pension during Wolf's lifetime than would have been paid had the spousal option been selected.

2. Some of the procedures available to Mrs. Wolf were to proceed under Section 7.04 of the Pension Plan or under Article XIX or Article XXI of the Constitution of the International Union. *See Wolf v. National Shopmen Pension Fund,* 512 F.Supp. 1182, 1183 (E.D.Pa.1981).

*Trustees within 180 days after receipt of such notice. The appeal shall be considered and decided by the Trustees.* The decision shall be communicated to the claimant within 90 days after receipt of all pertinent evidence. [Emphasis added] Section 7.04; App. 44a. Thus, the Plan itself clearly provides an internal procedure for handling appeals of denials of pension benefits in the first instance. The case law with regard to such appeals is clear: where a pension fund provides an appeals procedure in the event of a dispute concerning a participant's pension rights, that internal procedure must be exhausted by an aggrieved participant before an action is instituted against the fund for an improper denial of pension benefits. *Wolf v. National Shopmen Pension Fund,* 512 F.Supp. 1182, 1183–84 (E.D.Pa.1981). *See also Challenger v. Local 1, Int'l Bridge, Structural & Ornamental Iron Workers,* 619 F.2d 645, 647 (7th Cir.1980); *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980); *Scheider v. U.S. Steel Corp.,* 486 F.Supp. 211, 212–13 (W.D. Pa.1980); *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071, 1074–75 (E.D.Pa.1979). *Cf. United Steelworkers of America v. American Smelting & Refining Co.,* 648 F.2d 863, 870 (3d Cir.1981) (failure of losing party to raise issue before labor arbitrator precludes that party from raising such issue in a subsequent proceeding to vacate the arbitrator's award).

In this case, Mrs. Wolf never raised to the Trustees any argument based on interpretation of the Plan itself, yet it is the Trustees who are charged with interpreting and administering that Plan. Therefore, although Mrs. Wolf *technically* availed herself of existing internal appeals procedures as to her *negligence* claim, she did not properly exhaust her remedies as to her waiver claim.

Her failure to present a crucial, substantive argument (the waiver issue) to the Trustees, who constitute the appropriate administrative body charged with interpreting the disputed agreement in the first instance is, in my opinion, fatal to her appeal here.

Thus, I would reverse the district court's judgment and remand so that the Pension Fund Trustees could deal with the "waiver" issue in the first instance. By doing so, I find it unnecessary to address the district court's interpretation of the Plan, which Plan, in my view, is subject to initial interpretation by the Pension Fund, with deference given to that interpretation by us. However, the majority having undertaken this task, I should point out that the conclusion that the majority reaches is by no means certain or even probable. I note, for instance, that section 3.08 of the Plan provides that "[a] Participant who is permanently and totally disabled shall be entitled *to retire on a Disability Pension*" if certain conditions—not at issue here—are satisfied (emphasis added). This language, contrary to the majority's construction, *see* Maj.Op. at 16, leads to the conclusion that a *disability* claimant is indeed a *retired* claimant. The strained effort of the majority to read the Plan otherwise finds little support in either this section or in sections 5.03(b)[3] or 7.05(a)[4], upon which the Trustees have relied.

As stated previously, however, I would not reach the merits of Mrs. Wolf's waiver argument at this time for the simple reason that she has failed to exhaust existing and available internal appeals remedies as provided for by the very Plan giving rise to this dispute. On this basis alone I would reverse the district court's judgment and remand. I therefore respectfully dissent.

---

**3.** Section 5.03(b) states: "A Participant may reject the Husband-and-Wife Pension (or revoke a previous rejection) at any time before the Effective Date of his pension."

**4.** Section 7.05(a) states:
A Participant who is eligible to receive benefits under this Plan and makes application in accordance with the rules of this Pension Plan shall be entitled upon retirement to re-

ceive monthly benefits, subject to the provisions of this Plan. Benefit payments shall be payable commencing with the first day of the month following the month in which the Participant has fulfilled all the conditions for entitlement to benefits, including the filing of an application. Such first day is what is meant by the "Effective Date" of the Participant's pension.

**192**

## SUR PETITION FOR REHEARING IN BANC

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER and BECKER, Circuit Judges.

The petition for rehearing filed by NATIONAL SHOPMEN PENSION FUND, appellant in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all other available circuit judges in the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the Court in banc, the petition for rehearing is denied.

Judge Garth would grant the petition for rehearing for the reasons offered in his dissent, in particular the issue of exhaustion of administrative remedies.