**Willie J. McCOY, Plaintiff,**

v.

**BOARD OF TRUSTEES OF THE LABORERS' INTERNATIONAL UNION, LOCAL NO. 222 PENSION PLAN; Laborers' International Union, Local No. 222 Pension Plan; Laborers' International Union, Local No. 222; Edward Harris; Oliver G. Glass; New Jersey Building Laborers Statewide Pension Fund; X, Y, Z Corporations (1–10); A, B, C Plan Sponsors or Administrators (1–10), Defendants.**

**Civil Action No. 00–1481.**

United States District Court,
D. New Jersey.

Feb. 26, 2002.

William B. Hildebrand, Feldman, Hildebrand & Blaker, L.L.C., Cherry Hill, NJ, for Plaintiff, Willie J. McCoy.

Mark E. Belland, Steven J. Bushinsky, Tomar O'Brien Kaplan Jacoby & Graziano, Cherry Hill, NJ, for Defendants, Board of Trustees of the Laborers' International Union, Local No. 222 Pension Plan, Laborers' International Union, Local No. 222 Pension Plan, Laborers' International Union, Local No. 222, Edward Harris; Oliver G. Glass.

## OPINION

ORLOFSKY, District Judge.

## I. INTRODUCTION

A good actor, it is often said, must have good timing. If this case is any indication, the Defendants, a Pension Benefit Plan and its Trustees, are bad actors. By raising the Plaintiff's alleged failure to exhaust his administrative remedies under the Plan for the first time in their Cross Motion for Summary Judgment, the Defendants force me to determine whether or not exhaustion is a non-waivable jurisdictional requirement under ERISA. Since I find that it is not, I am also obliged to consider under what circumstances a Plaintiff may be prejudiced by a Plan's undue delay in raising an exhaustion defense.

Nor is that the only timing issue in this case. Invoking a provision that had been superseded eleven months before the Plaintiff filed his claim for benefits, the Trustees denied the Plaintiff benefits to which he believed he was due under the Plan. Although this Court is bound to respect the judgments of such trustees, who after all are presumptively expert within their field, that deference has its limits. In this case, the Trustees inexplicably disregarded a text that was clear both semantically and in a larger policy context. Thus, I will order the Defendants to make good the obligations they owe to the Plaintiff under their Plan. Finally, finding that the Trustees appear to have simply lost track of the time in which they must revise certain Plan materials, I shall also compel the Defendants to discharge their statutory obligation to provide full disclosure to all of their beneficiaries.

Therefore, for the reasons set forth in more detail below, I will grant in part and deny in part the Plaintiff's Motion for Summary Judgment. I will also grant in part and deny in part the Defendants' Cross–Motion for Summary Judgment, principally because the Plaintiff's claims for breach of fiduciary duty are largely already encompassed or effectively mooted by the other relief I grant him.

## II. FACTS AND PROCEDURAL HISTORY

The Defendants, Laborers' International Union, Local No. 222 Pension Plan ("the Local Plan" or "the Plan"), and New Jersey Building Laborers Statewide Pension Fund ("the State Plan") are employee benefit plans organized under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2000) ("ERISA"). Until its merger into the State Plan in 2001, the Local Plan was administered by the Defendant, Board of Trustees of the Laborers' International Union, Local No. 222 Pension Plan ("the Trustees"). Defendants Edward Harris and Oliver G. Glass were individual members of the Board of Trustees. Obviously, most participants in the Local Plan were members of the Defendant Union, the Laborers' International Union, Local No. 222 ("the Union").

Willie McCoy ("McCoy") has been a member of the Union and a participant in the various Plans since 1981. McCoy's principal work during this time has been as a laborer in the construction trade. In January of 1995, McCoy suffered a back injury that, he claims, left him unable to perform his duties as a laborer. McCoy continued to attempt to work periodically over the next three years, although he never worked more than 100 hours in any given year.

At some time after suffering his injury, McCoy applied for Social Security Disability Benefits. On November 27, 1998, the Office of Hearings and Appeals of the Social Security Administration approved McCoy's application, see Hildebrand Decl. Exh. M, and on December 28, 1998, the

Social Security Administration determined that McCoy was entitled to disability benefits retroactive to July, 1995. *Id.* Exh. N.

McCoy filed an application for disability retirement benefits under the Local Plan on December 18, 1998. *Id.* Exh. O. Under a provision of the Plan then in effect, applicants could demonstrate disability by proof that they had been awarded a disability benefit by the Social Security Administration. *Id.* Exh. G § 4.3(a)(3). If the applicant was otherwise qualified, his Disability Retirement Benefit would "begin as of the first day that he is eligible to receive a disability benefit under the Social Security Act." *Id.* § 4.3(a). In McCoy's case that date would have been July of 1995, as determined by the Social Security Administration. *Id.* Exh. N.

Although McCoy's application for Disability Retirement Benefits was approved, the Plan determined that he would receive benefits beginning January 1, 1999, rather than retroactive to July, 1995. *Id.* Exh. O. McCoy's benefits were set at $1,093.36 per month. *Id.*

Benefits under the plan are largely dependent on the amount of "Credit Years" an employee has accumulated. Employees get credit for a full year of service for any calendar year in which they work 1,000 or more hours. Employees who work a smaller amount of hours receive proportionately less credit, although below a certain threshold no credit at all is given. McCoy had a total of 13 years and eight months of "Credit Years" at the time of his disability. *Id.* The year in which credit was accumulated is relevant under the plan for participants who became "eligible" for benefits prior to 1997. For example, beneficiaries who became eligible during 1995 receive each month a total benefit of $60 times the number of pre–1986 credit years, plus $75 times the number of post–1986 credit years. The Plan calculated

McCoy's benefit as if he became eligible in 1997, and accordingly awarded him a flat $80 times his total credit years. *Id.* The Plan notified McCoy of its determinations by letter dated March 4, 1998. Defs.' Br. Exh. D.

In March of 1998, McCoy wrote to the Plan Administrator seeking additional information on how his benefits were calculated, as well as a variety of general information about the Plan, such as the identity of its Trustees and its procedures for receiving legal process. Hildebrand Decl. Exh. Q. McCoy also spoke in person with the Plan Administrator, telling her that he was dissatisfied with the Plan's determination. *Id.* Exh. Y at 73. On April 13, 1998, the Plan Administrator wrote to McCoy to inform him that the Plan would treat his letter as a request to appeal its decision. *Id.* Exh. R. McCoy responded in writing two days later by asking that the Plan provide an explanation for why it had denied him the benefits he had requested. *Id.* Exh. S. There is no evidence in the summary judgment record that he received any explanation prior to April 17, 2000.

At a May 12, 1999 meeting, the Trustees voted unanimously to deny McCoy's appeal. Defs.' Br. Exh. H. The summary judgment record does not indicate whether or not McCoy was advised of this decision. McCoy, however, was invited to attend a subsequent meeting of the Trustees on November 18, 1999, where he was permitted to present his case. *Id.* Exh. I. The Trustees referred McCoy's claim to their counsel for a recommendation. *Id.*

At some point between January and April of 2000, McCoy learned that his appeal had been denied. *See id.* Exh. M. On or about April 17, 2000, counsel for the Plan sent a letter to McCoy confirming in writing that McCoy's appeal had been denied. *Id.* The denial letter explained:

The basis for the denial was that the plan of benefits provides for the payment of a disability pension the month following the date the application is completed and filed if that is later than six months following the date of disability. Your application for disability pension benefits was filed with the Pension Fund in December of 1998. You were found disabled by the Social Security Administration as of 1995. As a result, you were placed in payment status the month following the date of your application, which was January of 1999. Accordingly, since your application was processed in accordance with the plan of benefits, your claim appeal has been denied by the Trustees.

*Id.* The denial letter did not refer to the amended language of the Plan § 4.3(a). The letter also made no mention of McCoy's options should he wish to appeal further.

On March 29, 2000, McCoy, proceeding *pro se*, filed a Complaint in this Court alleging that the Plan had breached its contract to provide him with benefits. McCoy then obtained counsel and, on August 4, 2000, filed an Amended Complaint, adding claims under ERISA § 502(a), 29 U.S.C. § 1132(a) (2000). In the Amended Complaint, McCoy sought payment of the unpaid benefits allegedly due him under the Plan, as well as declaratory and injunctive relief clarifying his right to future benefits under the Plan. On June 21, 2001, McCoy filed, with the permission of the Court, a Second Amended Complaint, adding certain factual allegations, and seeking an injunction ordering the Plan to prepare and circulate an updated Summary Plan Description, as allegedly required under ERISA. McCoy, again with the permission of the Court, filed a Third Amended

Complain on November 29, 2001, seeking increased future benefits under an amendment to the Plan McCoy alleged had erroneously not been applied to him.

The parties filed these cross-motions for summary judgment on December 14, 2001. On February 6, 2002, McCoy filed yet another Amended Complaint, adding as a Defendant the newly incorporated State Plan. At my request, the parties submitted letter briefs addressing what effect, if any, the Fourth Amended Complaint has upon the pending motions.[1]

I have jurisdiction over McCoy's claims pursuant to 29 U.S.C. §§ 1132(e) and (f), and 28 U.S.C. § 1331.

## III. DISCUSSION

### A. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir.2001); *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir.2001). In deciding whether there is a disputed issue of material fact, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See, e.g., Abramson*, 260 F.3d at 276 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir.2000)); *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir.2001)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

---

**1.** The parties have agreed that, other than the addition of the State Plan as a Defendant, the

Fourth Amended Complaint makes no meaningful changes to McCoy's claims.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided admissible evidence or affidavits to show that a question of material fact remains. *See, e.g., Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 138 (3d Cir.2001)(citing *Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 343 (3d Cir.2000)). The non-moving party must provide "sufficient evidence to allow a factfinder to find in its favor at trial." *Id.* at 138.

**B. Claims for Benefits**

McCoy alleges both that the Plan improperly calculated his benefits and that individual Trustees of the Plan breached their fiduciary duty to him. I shall first consider his benefits claims.

**1. Exhaustion**

■ A federal court will not consider a claim for benefits due under ERISA unless the plaintiff has first exhausted the remedies available under the plan. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 248–49 (3d Cir.2002) (citing *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990); *Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 892 (3d Cir.1986)). ERISA "requires only claim exhaustion." *Wolf v. Nat'l Shopmen Pension Fund*, 728 F.2d 182, 186 (3d Cir.1984). Thus, a plaintiff is not barred from presenting a new theory of relief to the court that was not presented to the trustees of the plan, so long as the trustees received an opportunity to resolve the dispute before suit. *Id.*

The Defendants argue that McCoy has failed to exhaust his administrative remedies under the Plan because he never submitted his claims for outside arbitration, as required by the Plan.[2] *See* Defs.' Br. at 11–13; Hildebrand Cert. Exh. C at 26. The Defendants, however, have waived their right to contest McCoy's failure to exhaust.[3]

■ Failure to exhaust administrative remedies is generally an affirmative defense subject to waiver. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 1278 (citing *Massey v. Helman*, 196 F.3d 727 (7th Cir. 1999)); *Nyhuis v. Reno*, 204 F.3d 65, 69 n. 4 (3d Cir.2000) (holding that prisoner's failure to exhaust prison administrative remedies is not jurisdictional); *see also Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991) (noting that failure to raise an affirmative defense in pleading or Rule 12 motion results in waiver). Although the Third Circuit has in the past referred offhandedly, in dicta, to the ERISA exhaustion requirement as jurisdictional, *see Wolf*, 728 F.2d at 186, a brief consideration demonstrates that it is not. Jurisdictional provisions are not subject to waiver or equitable tolling. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). That, of course, is because federal courts may not expand their jurisdiction beyond what has been granted to them by Congress. *See Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir.1998). Yet federal courts have allowed

---

**2.** It appears that arbitration can be part of the "internal" procedure an ERISA claimant is required to exhaust before filing suit. *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1116 & n. 5 (3d Cir.1993); *Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923, 939 (3d Cir.1985). *But see*

*Amato v. Bernard*, 618 F.2d 559, 568 n. 10 (9th Cir.1980).

**3.** I note that although McCoy's brief raised the waiver issue, *see* Pl.'s Opp. Br. at 8–9, the Defendants never responded to it.

a number of equitable exceptions to the ERISA exhaustion requirement. *See, e.g., Harrow,* 279 F.3d at 249–50 (discussing futility exception); *Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund,* 590 F.Supp. 211, 213 (E.D.Pa.1984) (identifying three distinct exceptions, and collecting cases). The most plausible explanation for this apparent inconsistency is that exhaustion is an aspect of the essentially contractual nature of an ERISA benefits remedy, as has been suggested strongly by several Third Circuit opinions. *See Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 167–68 (3d Cir.1999); *Barrowclough v. Kidder, Peabody & Co.,* 752 F.2d 923, 939 n. 15 (3d Cir.1985), *overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3d Cir.1993). Thus, failure to comply with the contractual terms for dispute resolution is an affirmative defense, much like any other defense arising from the terms of a contract. *Cf. Amato v. Bernard,* 618 F.2d 559, 566 (9th Cir.1980) (describing exhaustion requirement as based on "sound policy," rather than jurisdictional bar).

■■■ A party who fails to raise an affirmative defense in a timely fashion is deemed to have waived the defense. *See Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 461 F.2d 66, 74 (3d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972). However, a court may in its discretion consider an untimely assertion of an affirmative defense where delay appears not to have been for tactical or other improper reasons, or "most important," where delay did not prejudice the plaintiff's case. *Eddy v. V.I. Water & Power Auth.,* 256 F.3d 204, 209–10 (3d Cir.2001).[4]

■■■ The Defendants here have never alleged that McCoy failed to exhaust his administrative remedies in any pleading. Indeed, McCoy has himself pleaded exhaustion, and the Defendants have never denied that allegation. *See* 1st Am. Compl. ¶ 4; Defs.' Ans. To 1st Am. Compl. ¶ 4; 2d Am. Compl. ¶ 4; Defs.' Ans. To 2d Am. Compl. ¶ 4; 3d Am. Compl. ¶ 4; Defs.' Ans. To 3d Am. Compl. ¶ 4; 4th Am. Compl. ¶ 4; Defs.' Ans. To 4th Am. Compl. ¶¶ 1–8. Nor was McCoy ever given any indication that he had failed to exhaust all available administrative remedies at the Plan level. Neither the Summary Plan Description, nor the Defendants' denial letter, made any mention of review by an arbitrator. *See* McCoy Aff. ¶ 3; Hildebrand Cert. Exh. K at 17; Defs.' Br. Exh. M.

Under these circumstances, McCoy clearly has been prejudiced by the Defendants' delay. Had he been made aware of any defect in his exhaustion of the Plan remedies, whether through pleadings or otherwise, McCoy could have himself sought a stay and remand. If that had been done when the First Amended Complaint was filed, he might already be back in federal court, or already have been fully satisfied by the arbitrator. McCoy's claim of prejudice is especially strong in light of the fact that one of the purposes of exhaustion is precisely to save parties and courts from wasting time and money on unnecessary litigation. *See Harrow,* 279 F.3d at 249–50; *cf. Sims v. Apfel,* 530 U.S. 103, 113, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (O'Connor, J., concurring) ("[T]he agency's failure to notify claimants

---

4. Arguably, the standard for allowing introduction of an untimely qualified immunity defense, as described in *Eddy,* is more forgiving than the appropriate standard where the asserted defense does not involve "important public purposes" such as are implicated by official immunity. *See Eddy,* 256 F.3d at 210. Since I conclude that the Defendants fail to meet even the more generous standard, I need not determine that question.

of an issue exhaustion requirement in this context is a sufficient basis for our decision.") In addition, while there is no evidence of deliberate delay by the Defendants as such, the conspicuous absence of any information about arbitration, despite all of their extensive correspondence with McCoy, could certainly support an inference of intentional obfuscation. The same might be said of the extraordinary fact that the Summary Plan Description, under a heading marked "Right to Appeal," describes in some detail all of the required appeal provisions except arbitration, about which it makes no mention. Hildebrand Decl. Exh. K at 17.

Accordingly, I conclude that the Defendants have waived their failure to exhaust defense.

### 2. The Retroactive Benefits

▇▇▇ McCoy claims that, under the terms of the Plan in effect at the time of his application, he is entitled to benefits retroactive to the date of his eligibility for Social Security Disability benefits. *See* Pl.'s Br. at 9. The Trustees maintain, consistent with their initial determination, that McCoy is entitled to benefits beginning the month after his application, or January, 1999. I must defer to a Plan Administrator's interpretation of the Plan unless it is "arbitrary and capricious." *Skretvedt v. E.I. DuPont de Nemours & Co.*, 268 F.3d 167, 173 (3d Cir.2001) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Interpretations, however, that contravene the plain language of the Plan

are arbitrary and capricious, and can command no deference. *Epright v. Entl. Res. Mgmt., Inc. Health and Welfare Plan*, 81 F.3d 335, 342 (3d Cir.1996).[5]

The core of the dispute between McCoy and the Defendants is the applicability of an amendment to the Plan, which went into effect January 1, 1998, about eleven months before McCoy filed his application. *See* Hildebrand Decl. Exh. G. Prior to the amendment, participants who wished to claim a "Disability Retirement Benefit" were required to submit to the Trustees evidence demonstrating their disability. Applicants whom the Trustees found to be disabled became "eligible to receive a Disability Retirement Benefit" on the first day of the seventh month following the onset of their disability, or the first day of the month following the Trustees' receipt of the application, whichever was later. *See id.* Exh. C at 10. The 1998 amendment revamped that scheme, so that rather than offering proof of disability to the Trustees in the first instance, an applicant instead need only show that he had been awarded a disability benefit under the Social Security Act. *See id.* Exh. G. Only if the Social Security Administration denied benefits would the Trustees consider any evidence. *Id.* As the amendment's drafters plainly realized, applications for Social Security benefits can take a long time before final resolution. Thus, the amendment provided that successful applicants "shall be eligible to receive a Disability Retirement Benefit" retroactive to the first date of eligibility under the Social Security Act. *Id.*

**5.** McCoy argues that no deference is due to interpretations presented for the first time on appeal. The Defendants' denial letter, the only explanation McCoy ever received for the Defendants' decision, does not even mention the language McCoy now relies on, let alone explain why they chose not to apply that language. *See* Defs.' Br. Exh. M. The Third

Circuit has reserved judgment on this question, although it certainly does not appear to be very sympathetic to such "post hoc" justifications. *See Skretvedt*, 268 F.3d at 177 n. 8. Because I find that the Defendants' interpretation is contrary to the plain language of the Plan, I need not decide the issue at this time.

As the Defendants appear to concede, the plain language of the amendment governs applications for Disability Benefits received after its effective date, January 1, 1998. Indeed, it is unclear what else "Effective January 1, 1998" could mean.[6] The Defendants respond, however, by offering two mutually inconsistent explanations for their decision.

First, the Defendants argue that in order to be "consistent" and "fair," they were obliged to treat McCoy's application as though the 1995 version of the Plan were still in effect. Defs.' Br. at 18–19. Or, put another way, in order to be consistent, they had to treat McCoy differently from everyone else who applied after January 1, 1998. In support of this rather unbelievable leap of logic, the Defendants claim that to do otherwise would undermine the actuarial integrity of the Plan. Since McCoy was not working during the period between the date of his disability and the date of his application, he (or his employer) was not making any contributions to the Plan. Thus, the Defendants say, if the Plan pays McCoy retroactively, it will be making benefits payments without offsetting contributions. Yet that is the precise situation for *every* applicant for Disability Retirement Benefits under the revised § 4.3(a). By its terms, the revised § 4.3(a) expressly provides for retroactive payments to participants who have been disabled, and therefore are out of work.

Alternatively, the Defendants claim that § 4.3, in either of its versions, is completely inapplicable to McCoy because his application was, in fact, more properly considered as one under § 4.4, "Deferred Vested Retirement Benefit." Section 4.4, however, applies only to "A Participant who is not otherwise entitled to receive a Retirement Benefit hereunder . . . ." Hildebrand

Decl. Exh. C at 11. Therefore, before even considering § 4.4, the Administrator should first have determined whether McCoy was entitled to benefits under § 4.3.

■ In sum, I conclude that the plain language of the amended § 4.3(a), whether read alone or in context, requires that McCoy be found "eligible to receive a Disability Retirement Benefit which shall begin as of the first day that he is eligible to receive a disability benefit under the Social Security Act." *Id.* Exh. G. Therefore, he is entitled to benefits retroactive to July, 1995. *See id.* Exh. N at 5. The Defendants' determination to the contrary, inasmuch as it is inconsistent with the plain language of the Plan, is arbitrary and capricious and must be set aside. Therefore, I will grant the Plaintiff's motion for summary judgment on this issue.

### 3. The Amount of Retroactive Benefits

My decision that McCoy is entitled to receive benefits retroactive to July of 1995 necessarily requires me to determine the dollar value of those benefits. McCoy argues that, inasmuch as the Defendants began his payments in 1999, the amount of his benefits should be computed as though he became "eligible" at that time, which would entitle him to a payment of $120 per month per Year of Credit. *See id.* Exh. J. The Defendants determined that McCoy's pension would be calculated as if he were "eligible" in 1997. *See* Defs.' Br. Exh. N at 1. Therefore, they awarded him a monthly total of $80.00 times his Years of Credit. Hildebrand Decl. Exh. H.

■ Although "eligible" is not defined straightforwardly at all points of the

---

**6.** Since the amendment itself defines "eligible," it would be rather tautological for the amendment to apply only to applicants who become "eligible" after January 1, 1998.

Plan, it is clearly defined for recipients of Disability Retirement Benefits. According to the revised § 4.3, which I have determined is the provision controlling McCoy's application, a Participant becomes "eligible" on "the first day that he is eligible to receive a disability benefit under the Social Security Act." *Id.* Exh. G. For McCoy, that date is 1995. Therefore, his retroactive benefits should be calculated according to the terms of the Plan applicable to Participants who became "eligible on or after January 1, 1994 through December 31, 1995." *Id.* Exh. F. That figure is $60 per Year of Credit earned prior to January 1, 1986, and $75 per Year of Credit earned on or after January 1, 1986. *Id.* Additionally, McCoy's pension would have been subject to periodic increases. *See id.* Exhs. H, J. McCoy is also entitled to receive pre-judgment interest on the unpaid benefits. *See Fotta v. Trustees of United Mine Workers of Am., Health & Ret. Fund of 1974*, 165 F.3d 209, 212 (3d Cir.1998) (citing *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1010 (3d Cir.1992); *Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees*, 960 F.2d 1187, 1192 n. 4 (3d Cir.1992)).

Obviously, this figure is lower than the number sought by either McCoy or the Plan. I am, however, bound by the terms of the Plan. I cannot make McCoy whole for benefits to which he was not entitled.

Accordingly, I must deny McCoy's Motion for Summary Judgment insofar as he seeks a retroactive award of benefits at $120 per month per Credit Year. I also must grant the Defendants' Motion for Summary Judgment to the extent that it seeks to terminate McCoy's claim to retroactive benefits at the $120 level. I shall order the Plan to reimburse McCoy for retroactive benefits from July of 1995 to January of 1999 according to the computation I have just set out, plus pre-judgment interest at the judgment rate as of January 1, 1999.[7] I leave the exact calculation of the proper amount of McCoy's retroactive benefits to the Plan Administrator in the first instance.

### 4. The Future Benefits

██ Again citing the Defendants' determination that he was entitled to receive payments as of January 1, 1999, McCoy claims that the amount of his benefits from that date going forward should have been set at $120 per month per Credit Year. And, again, my determination that McCoy was "eligible" as of January, 1995, necessarily forecloses that argument. *See* III. B.4., *supra.* Therefore, I will deny McCoy's Motion for Summary Judgment, and grant the Defendants' Motion for Summary Judgment, on this ground.[8]

### C. Breach of Fiduciary Duty

The Defendants' Cross–Motion for Summary Judgment seeks to dismiss McCoy's

---

7. *See* 28 U.S.C. § 1961 (2000). Because pre-judgment interest is an equitable remedy, the rate is not determined by statute. *See Brock v. Richardson*, 812 F.2d 121, 127 (3d Cir. 1987). Since, however, the statutory judgment rate is intended to represent the time-value of money, *see Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), I deem that rate to be the most appropriate measure of what is required to make McCoy whole for his losses. Because it does not appear that the Plan provided for interest payments on retroactive benefits for claim-

ants under the revised § 4.3(a), interest should be calculated beginning at the time McCoy should have received his first payment, that is, January 1, 1999.

8. I note that no party has asked me to reduce McCoy's future benefits from the $80 per month per Credit Year figure computed by the Plan Administrator. Therefore, I intimate no opinion as to the propriety of that figure, or whether the Trustees would be estopped from challenging it at this late date.

various allegations that the individual Trustees, Glass and Harris, breached their fiduciary duty to McCoy. More particularly, McCoy alleges the individual Trustees instructed him to wait until he had been found disabled before applying for Disability Retirement Benefits, and that the individual Trustees never told him that by waiting to file an application, McCoy would be forfeiting benefits for the period he waited.[9]

■ In order to establish a claim that an ERISA fiduciary has, through misrepresentation, breached its duty, a plaintiff must show: "(1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir.2001) (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 505 (3d Cir.2001); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d Cir.2000)).

■ In light of my resolution of McCoy's claims for benefits, *see* III.B., *supra*, I conclude that McCoy has not suffered any detriment as a result of any possible misrepresentations or omissions by the individual Trustees.[10] Accordingly, I will grant the Defendants' Motion for Summary Judgment on the breach of fiduciary duty claims.

**D. The Summary Plan Description**

Finally, McCoy seeks an injunction ordering the Defendants to make available an updated copy of the Summary Plan Description, as required by ERISA. *See* 29 U.S.C. § 1021(a)(1). The only Summary Plan Description presently available to participants in the Plan was written in 1993. *See* Hildebrand Decl. Exh. K at page i. ERISA requires the administrator of a plan to "furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year ... [a Summary Plan Description] which integrates all plan amendments made within such five-year period." 29 U.S.C. § 1024(b)(1).

■ The Defendants do not dispute that there have been amendments to the Plan since 1993, and that they have never prepared an updated Summary Plan Description. *See* Defs.' Br. at 37; Hildebrand Decl. Exh. AA at 12; id. Exh. BB at 18–19. Instead, the Defendants claim that the Local Plan's merger into the State Plan makes McCoy's request moot. Defs.' Br. at 37. Even accepting Defendants'

---

9. McCoy has also asserted a number of claims denominated as "fiduciary" that are in fact claims for benefits. *See Harrow*, 279 F.3d at 251–54. I resolve these claims together with McCoy's benefits claims, *supra*.

10. As an individual, McCoy cannot bring a breach of fiduciary duty claim under ERISA § 409(a). *See Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). His alternative is bring a claim for "appropriate equitable relief" under § 502(a)(3). *See In re Unisys Corp.*, 57 F.3d 1255, 1268 (3d Cir.1995), *cert. denied sub. nom. Unisys Corp. v. Pickering*, 517 U.S. 1103, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996). Although McCoy can receive restitu-

tion for lost back benefits under that section, *see id.* at 1269, he cannot receive extracontractual, punitive, or other monetary damages. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253–54, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Accordingly, he cannot receive anything in his breach of fiduciary duty claims that I have not already awarded him under his claims for benefits. Equitable relief for a breach of fiduciary duty is not appropriate in that circumstance. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir.), *cert. denied*, 522 U.S. 996, 118 S.Ct. 559, 139 L.Ed.2d 401 (1997); *Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1006 (8th Cir.1996).

unstated premise that the State Plan is a legally distinct entity under ERISA, Defendants are still obligated to provide a Summary Plan Description under §§ 1021 and 1024. If, as they imply, all participants in the Local Plan exited the Local Plan and became participants in the State Plan, the Defendants were required to furnish a Summary Plan Description to each participant "within 90 days after he bec[ame] a participant" in the State Plan. 29 U.S.C. § 1024(b)(1)(A). It has been more than ninety days since the merger. *See* Zinni Aff. ¶ 4.

Thus, I must grant McCoy's Motion for Summary Judgment on this claim. The Defendants shall furnish McCoy with a copy of an official Summary Plan Description, describing the pertinent features of the State Plan, within ten days of the next regularly scheduled meeting of the Trustees of the State Plan.

## IV. CONCLUSION

For the reasons set forth above, I shall grant McCoy's Motion for Summary Judgment on his claim for retroactive benefits for the period from July, 1995 through January, 1999. The Defendants are ordered to compute the appropriate amount of benefits under the Plan as if McCoy had become "eligible" in July of 1995, and pay such benefits to him as soon as is practicable. I shall also grant McCoy's Motion for Summary Judgment insofar as it requests that the Defendants provide McCoy with a Summary Plan Description of the Plan in which he is now a participant, the State Plan. The Defendants will make the Summary Plan Description available to McCoy within ten days of the next regularly scheduled meeting of their Trustees. McCoy's Motion for Summary Judgment will be denied in all other respects. Additionally, I shall grant the Defendants' Cross Motion for Summary Judgment on

McCoy's claims seeking benefits at $120 per month per Credit Year, and on his claims for breach of fiduciary duty. The Court will enter an appropriate form of Order.