81 F.3d 335
 19 Employee Benefits Cas. 2936, Pens. Plan Guide P 23919D
Charles John EPRIGHT, Appellant,
v.
ENVIRONMENTAL RESOURCES MANAGEMENT, INC. HEALTH AND WELFARE
PLAN; ERM Enviroclean; Noble Lowndes/Johnson,
Administrator; John Doe Trustees, 1 through 10 in their
capacity as Trustees of the Environmental Management, Inc.
Health and Welfare Plan; Chief Financial Officer,
Environmental Resources Management, Inc.
 No. 95-1110.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 13, 1995.
Decided Feb. 16, 1996.
 
 On Appeal from the February 3, 1995 Order of the United States District Court for the Eastern District of Pennsylvania; Joseph L. McGlynn, Jr., Judge. D.C. Civil Action No. 93-cv-06034.
 
 
 1
 Louis Agre (argued), North Philadelphia, PA, Loralee Choman, Wilkes-Barre, PA, for Appellant.
 
 
 2
 Michael F. Kraemer (argued), Debbie Rodman Sandler, White and Williams, Philadelphia, PA, for Appellees.
 
 
 3
 Wayne R. Berry, United States Department of Labor, Plan Benefits Security Division, Washington, DC, for Amicus-appellant.
 
 
 4
 Before: BECKER and SCIRICA, Circuit Judges, and COHILL, District Judge.*
 
 OPINION OF THE COURT
 
 5
 COHILL, Senior District Judge.
 
 I. Jurisdiction
 
 6
 Here we consider the appeal from an Order of the United States District Court for the Eastern District of Pennsylvania entering judgment against the appellant/plaintiff, Charles John Epright. Mr. Epright is a former employee of the defendant/appellee, ERM Enviroclean, Inc. ("ERM"), a corporation with its principal place of business in West Chester, Pennsylvania. Mr. Epright brought this action alleging improper denial of medical benefits by ERM in violation of § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.
 
 
 7
 The district court had subject matter jurisdiction based upon the alleged violation of ERISA and 28 U.S.C. § 1331 (federal question). Because of the discretionary nature of the Plan Administrator's authority regarding Plan benefits, the district court reviewed the Plan Administrator's decision under an "arbitrary and capricious" standard. Kotrosits v. GATX Corp. Non-Contributory Pension, 970 F.2d 1165, 1171 (3d Cir.), cert. denied, 506 U.S. 1021, 113 S.Ct. 657, 121 L.Ed.2d 583 (1992).
 
 
 8
 The Secretary of Labor filed a brief as amicus curiae in support of the appellant.
 
 II. Background
 
 9
 The case arises because Mr. Epright was severely injured in a non-work related swimming pool accident and denied health and welfare benefits under the ERM employee benefits plan. ERM had a rather unusual business practice with respect to its employees. At the time an employee was hired, ERM's president, Stanley Porfido, would assign the employee to one of three classifications--full-time, temporary, or part-time. The employee's classification would be changed only when Mr. Porfido so directed. Neither Mr. Porfido nor the company had written guidelines to determine how the employee should be designated or when the classification might be changed. App. at 134.
 
 
 10
 Mr. Porfido testified that in deciding to change an employee's status to full-time he considered the backlog of work, the employee's skills, attendance and an employee's "performance, the initiative, and attitude that the individual brings to the job; the enthusiasm, the willingness to make an extra effort; having a can-do attitude; [and] being a team player." Id.
 
 
 11
 Part-time employees were not entitled to company health and welfare benefits. When Mr. Epright was hired, on or about November 18, 1992, Mr. Porfido designated him a "temporary employee."
 
 The Employee Handbook stated in part:
 
 12
 You are a full time employee of ERM if you work a minimum of 30 hours each week on a continuous basis and are designated as a full time employee. As a full time employee you are eligible for group medical, life and long term disability insurance coverage....
 
 
 13
 You are a part time employee of ERM if you work less than 30 hours each week on a continuous scheduled basis or designated as a part time employee. You are not entitled to participate in group medical, life, and long-term disability plans.
 
 
 14
 App. at 331 (second emphasis added).
 
 
 15
 The Handbook made no reference to temporary employees such as Mr. Epright.
 
 
 16
 The ERM Health and Welfare Plan, on the other hand, defines "eligible classes" as all "active, full-time employees" of ERM who have selected the high option or standard option plan, and states that the eligibility date is the "date following 60 consecutive days of active, full-time employment." App. at 191. The Plan goes on to state that if an employee is eligible the coverage will become effective on "the date eligible if actively at work ...." Id.
 
 
 17
 An active, full-time employee is defined in the Plan as one who "regularly works 30 hours or more each week...." App. at 232.
 
 
 18
 Like the Handbook, the Plan makes no reference to temporary employees. Mr. Epright regularly worked 40 to 65 hours per week from the time of his employment until the date of his injury, July 31, 1993. He had completed 60 days of service on January 25, 1993. Thus, if one excludes his designation by Mr. Porfido as a "temporary employee," Mr. Epright unquestionably met the definition of an active, full-time employee in both the Plan and the Employee Handbook. If one applies the designation of temporary employee to Mr. Epright, he still met the definition of active, full-time employee in the Plan, although not in the Employee Handbook.
 
 
 19
 Subsequent to January 25, 1993, it is undisputed that Mr. Epright often inquired of ERM when he would receive Health and Welfare benefits. Indeed, he testified that he had previously worked for a contractor where he received no health benefits, and that he accepted the job at ERM so that he could have health benefits, even though the pay was the same as he had received at his previous job. App. at 100.
 
 
 20
 Finally, in July of 1993, he was informed that he would be eligible for Plan coverage commencing August 1, 1993. He was instructed to fly from his work-site in Florida to company headquarters in Pennsylvania and complete Plan enrollment forms on August 2, 1993.
 
 
 21
 As noted, the accident occurred on July 31, and the Plan Administrator refused coverage on the grounds that on July 31, Mr. Epright was a temporary employee and therefore ineligible.
 
 
 22
 The Plan provides that an appeal from a denial of benefits must be made within 120 days. Mr. Epright did appeal the initial denial, but subsequent to the 120 day period. ERM denied the appeal both on the merits and due to its untimeliness. ERM also argued that Mr. Epright had never filled out the appropriate forms or indicated which health benefits option he wanted. Mr. Epright commenced this action alleging wrongful denial of Plan benefits. The parties agreed to bifurcate the issues of liability and damages, and a bench trial was held solely on the issue of liability.
 
 
 23
 The Court entered judgment in favor of the defendants on December 6, 1994, holding that because Mr. Epright was a temporary employee, he was ineligible for Plan benefits. Mr. Epright moved the district court to alter or amend its judgment; this was denied in February of 1995.
 
 
 24
 This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Its review of the district court's legal conclusions is plenary. Epstein Family Partnership v. Kmart Corp., 13 F.3d 762, 765-66 (3d Cir.1994).
 
 III. Issues
 Four issues must be considered here:
 
 25
 (A) Whether ERM may lawfully designate some employees as "temporary" and exclude them from Plan coverage because of this designation when the Plan makes no reference to such designation;
 
 
 26
 (B) Whether the fact that Mr. Epright never filled out Plan enrollment forms serves to exclude him from coverage;
 
 
 27
 (C) Whether his failure to request review of the denial of benefits within 120 days is an independent basis for denial of benefits; and
 
 
 28
 (D) Whether the decision of the Plan Administrator to deny benefits was arbitrary and capricious.
 
 IV. Discussion
 
 29
 (A)
 
 
 30
 ERISA plans are required to be in writing. 29 U.S.C. § 1102(a)(1). They are to be administered by fiduciaries, id., and Congress has emphasized a fiduciary's obligations to comply with the terms of the Plan. Nazay v. Miller, 949 F.2d 1323, 1329 (3d Cir.1991).
 
 
 31
 A Plan Administrator has discretion when interpreting the terms of the Plan; however, the interpretation may not controvert the plain language of the document. Gaines v. Amalgamated Ins. Fund, 753 F.2d 288, 289 (3d Cir.1985). Extrinsic evidence may be used to determine an ambiguous term; however, it is inappropriate to consider such evidence when no ambiguity exists. Boyer v. Douglas Components Corp., 986 F.2d 999, 1005 (6th Cir.1993). Additionally, past practice is of no significance where the plan document is clear. Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir.1984), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); Snyder v. Titus, 513 F.Supp. 926, 934 (E.D.Va.1981) ("[b]eing consistently wrong can hardly be sanctioned as right").
 
 
 32
 In the instant case, Mr. Epright argues that the Plan Administrator's denial of insurance benefits controverts the plain language of the document. He points out that the Plan expressly provides coverage to "full-time employees" who have completed sixty days of "active" service. Since the Plan defines active service as working more than thirty hours a week, which Mr. Epright indisputably did, he argues that pursuant to the plain language of the Plan, he was entitled to coverage on his sixty-first day of employment, January 26, 1993.
 
 
 33
 ERM maintains that the district court was correct when noting that ERM was acting consistently with its long-standing policy when it denied benefits to Mr. Epright, a temporary employee. It also points out that Mr. Epright knew that as a temporary employee he was not covered by the Plan.
 
 
 34
 Significantly, ERM argues that the term "full-time employee" is ambiguous, and thus evidence extrinsic to the Plan may be used to interpret this term. The issue thus becomes whether the term "full-time employee," which is defined by the Plan, is ambiguous and subject to interpretation.
 
 
 35
 In support of its contention that the term "full-time employee" is ambiguous, ERM relies on Gaines. In Gaines, this Court held that a Plan provision allowing benefits to people eligible to receive them within nine months of the last date of employment should be interpreted to mean entitled to receive benefits within the context of the Social Security Act ("SSA"). Since under the SSA individuals are not entitled to benefits until the sixth month after the onset of a disability, the Plan Administrator determined that an employee was only eligible for benefits if a person was entitled to the benefits pursuant to the SSA (i.e. only if the end of the five month waiting period occurred within the nine month eligibility period). Gaines, 753 F.2d at 290. This Court held that the Administrator's interpretation was reasonable, and as such, not arbitrary or capricious. Id. at 289. ERM argues that since the interpretation in Gaines was reasonable, its interpretation of "full-time employee" is reasonable. We disagree.
 
 
 36
 ERM's analogy between Gaines and the instant case fails on a number of points. First, the Plan language at issue in Gaines is dissimilar to the Plan language at issue in the instant case. Second, and more importantly, there was no definition of the language in question in the Plan in Gaines. Thus, looking to the SSA for a definition was reasonable. In the instant case, a definition of the language in question is provided in the Plan. As such, there is no reason to look outside the Plan for an interpretation.
 
 
 37
 Lastly, ERM is not pointing to a statutory provision to help define the term, as was the case in Gaines; rather, ERM relies on a self-serving company practice.
 
 
 38
 We hold that the term "full-time employee" is not ambiguous. A definition was provided by the Plan, and it is this definition, not extrinsic evidence, that is to be used to interpret this term. Simply because ERM has consistently misinterpreted the term "full-time employee" does not mean that such misinterpretation should be deemed part of the Plan and sanctioned as lawful. Accordingly, consistent with the Plan's language, we hold that, for purposes of the Plan, Mr. Epright became a full-time employee at the completion of sixty days of active service, or on January 26, 1993.
 
 
 39
 Mr. Epright has also argued that a Plan Administrator who has a conflict of interest should be held to some form of heightened scrutiny beyond the typical "arbitrary and capricious" standard. Here Mr. Sevick, the Plan Administrator, was also a part owner of the company. A court may consider conflicts of interest as a factor when deciding if a denial of benefits was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989); Doe v. Group Hospitalization & Medical Servs., 3 F.3d 80, 85-87 (4th Cir.1993). Because we hold that ERM's denial of Plan benefits pursuant to its practice of designating some employees as temporary ones controverts the plain language of its Plan, we need not consider this issue.
 
 
 40
 (B)
 
 
 41
 ERM next argues that even if Mr. Epright was a full-time employee on January 26, 1993, since he had not completed Plan enrollment forms, nor designated the type of coverage he desired, he was not entitled to any Plan benefits. ERM points to the language in the Plan, which defines classes of employees eligible for coverage as those "who have selected the [appropriate coverage]." App. at 191 (emphasis added). ERM argues that this places an affirmative duty on an individual to select coverage prior to any such coverage taking effect. In support of this argument it points out that Mr. Epright might have selected the HMO coverage or additional compensation in lieu of Plan coverage. In such an event, it would have no liability for his current medical expenses.
 
 
 42
 The Secretary of Labor, in his brief amicus curiae, responds to this argument by noting that immediately following the above quoted language, the Plan, with respect to standard option coverage, states that "[i]f eligible, coverage shall become effective on ... the date eligible if actively at work ...." Id. (emphasis added). Thus, he argues that this language means that if an employee is working actively, pursuant to the Plan's definition, the employee becomes immediately eligible for the standard option coverage on the sixty-first day of service to the extent another option has not otherwise been selected. As such, he maintains that since Mr. Epright became eligible for coverage on January 26, 1993, the standard option plan became effective on this date.
 
 
 43
 As additional support for his argument, the Secretary of Labor points to the fact that Mr. Porfido, ERM's president, testified that Mr. Epright was to become eligible for benefits on August 1, 1993, which was one day prior to the day that he was supposed to fly back from Florida to fill out the appropriate forms. The Secretary thus argues that Mr. Porfido's testimony that Mr. Epright was to become eligible for Plan coverage one day prior to filling out the forms shows that the completion of these forms is a ministerial act which is not a condition precedent to becoming eligible for Plan coverage.
 
 
 44
 We agree with this last argument, particularly as it stands in the instant context. If an employee knew that he or she was eligible for Plan benefits and yet did not complete the requisite enrollment forms through procrastination or indecision, ERM might have an argument that the employee was not covered by the Plan. Such is not the case here. Due to ERM's erroneous interpretation of the Plan, Mr. Epright was under the mistaken impression that he was not eligible for Plan coverage. He had made numerous inquiries into when his employee status would change so that he would be eligible for Plan benefits. Thus, it was not through lack of diligence on his part that the enrollment forms were not completed; rather, it was solely due to ERM's erroneous interpretation of its own Plan. ERM should not now be allowed to benefit from its own mistake at the expense of its employee. To the extent that completed enrollment forms are a prerequisite to eligibility for Plan benefits, such a requirement is excused in the instant case as their lack of existence is due to the defendant's mistake, and not the plaintiff's.[1]
 
 
 45
 (C)
 
 
 46
 ERM's next argument is that even if it otherwise should have been liable for Plan benefits in the instant case, Mr. Epright's untimely request for review of the initial denial of Plan benefits precludes him from obtaining those benefits.
 
 
 47
 The Plan provides that after a denial of benefits a participant has 120 days to request that the Plan Administrator review the denial. Mr. Epright did request such a review; however, he did so more than 120 days after the denial of benefits. The Plan Administrator used the untimeliness of this request as one of his reasons for denying Mr. Epright Plan benefits. ERM argues that in using the untimeliness of the request for review to deny Mr. Epright Plan benefits, the Plan Administrator was relying on the plain language of the Plan, and as such his decision should be upheld. Mr. Epright responds by arguing that ERM's initial letter denying him Plan benefits fell short of statutory and regulatory requirements, and as such his request for review was timely. Specifically, he points out that Section 503 of ERISA provides that,
 
 
 48
 In accordance with regulations of the Secretary, every employee benefit plan shall-
 
 
 49
 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for said denial, written in a manner to be understood by the participant; and(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
 
 
 50
 29 U.S.C. § 1133. Additionally, and in accordance with Section 503, the Secretary of Labor has established that the notice of a claim denial must:
 
 
 51
 provide to every claimant who has been denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
 
 
 52
 (1) The specific reason or reasons for the denial;
 
 
 53
 (2) Specific reference to pertinent plan provisions on which the denial is based;
 
 
 54
 (3) A description of any additional material or information necessary for the claimant to perfect a claim and an explanation why such material or information is necessary; and
 
 
 55
 (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.
 
 
 56
 29 C.F.R. § 2560.503-1(f). Mr. Epright argues that ERM's letter denying him benefits did not comply with subsections (2)-(4) of the above regulation, and as such his request for review was timely. ERM does not rebut these assertions, although they do argue that Mr. Epright's attorney had a copy of the Plan, and they argue that as such, there was no excuse for requesting review subsequent to the 120 day period. We disagree.
 
 
 57
 We initially note that in their letter of denial, ERM took the position that because Mr. Epright was a temporary employee, and not a participant of their Plan, they were under no duty to comply with ERISA. App. at 184-85. The letter did not refer to any Plan provision as a basis for denying the claim, nor did it provide information as to how Mr. Epright could perfect his claim. Most significantly, it did not reference the appropriate avenue for obtaining a review of the decision denying Mr. Epright benefits. Id. When a letter terminating or denying Plan benefits does not explain the proper steps for pursuing review of the termination or denial, the Plan's time bar for such a review is not triggered. White v. Jacobs Eng'g Group, 896 F.2d 344, 350 (9th Cir.1989). In the instant case, because ERM's letter denying Mr. Epright Plan benefits did not explain the proper steps for requesting a review of this denial, the 120 day time bar was not triggered. Accordingly, his request for review was submitted in a timely fashion. The fact that Mr. Epright's attorney had a copy of the Plan, and thus the means to ascertain the proper steps for requesting review, in no way excuses ERM's failure to comply with the Department of Labor's regulations. E.g., Tomczyscyn v. Teamsters, Local 115 Health and Welfare Fund, 590 F.Supp. 211, 214 (E.D.Pa.1984); McLean Hosp. Corp. v. Lasher, 819 F.Supp. 110, 125 (D.Mass.1993); Graham v. Federal Express Corp., 725 F.Supp. 429, 436 n. 5 (W.D.Ark.1989).
 
 
 58
 Because we hold that Mr. Epright's request for review of the initial decision to deny him Plan benefits was submitted in a timely fashion, we need not address his argument that even if his request for review was not timely submitted, it should be excused because seeking such review would have been futile.
 
 
 59
 (D)
 
 
 60
 The last issue is, considering the above discussion, whether ERM acted arbitrarily and capriciously when denying Mr. Epright's benefits. The United States Court of Appeals for the Eighth Circuit has held that when the Trustees of a pension plan imposed standards not required by the plan itself, they acted arbitrarily. Morgan v. Mullins, 643 F.2d 1320, 1321 (8th Cir.1981). We agree with this proposition of law. Moreover, only written amendments, executed in accordance with the Plan's procedure for amendments, can change the Plan. Oral amendments are not valid. Confer v. Custom Eng'g Co., 952 F.2d 41, 43 (3d Cir.1991). In the instant case ERM's imposition of the "Temporary Employee" classification is a standard not required by the Plan. Essentially, it is an amendment to the Plan that has not been incorporated into the Plan document. By imposing a requirement which is extrinsic to the Plan, ERM has acted arbitrarily and capriciously.
 
 
 61
 ERM attempts to rebut this conclusion by arguing that under the arbitrary and capricious standard, a Plan Administrator's decision should be upheld if there is any reasonable basis for doing so. Blakeman v. Mead Containers, 779 F.2d 1146, 1150 (6th Cir.1985). This a correct statement of that rule of law, but it does not apply here. The classification of Mr. Epright as a temporary employee controverted the Plain language of the Plan; Mr. Epright was validly excused from completing enrollment forms due to ERM's mistaken conduct and Mr. Epright sought review of the initial denial of Plan benefits in a timely fashion. Accordingly, there was no reasonable basis for the Plan Administrator's denial of benefits.
 
 V. Conclusion
 
 62
 In summary, we hold that Mr. Epright met all of the Plan's requirements for coverage thereunder, and as such he was entitled to coverage under the Standard Option Plan. ERM's practice of designating employees as temporary or full-time is extrinsic to the Plan, and as such cannot lawfully be considered when determining who is eligible for Plan coverage. If ERM wants to adopt such a procedure, it must amend its Plan in proper fashion. Because the enrollment forms were not completed due to ERM's mistake, and not through any fault of the plaintiff, the lack of completed forms will not preclude Mr. Epright from coverage under the Plan. We also hold that Mr. Epright did seek review from the Plan Administrator's initial denial of Plan benefits in a timely fashion. Finally, we hold that ERM, through its Health and Welfare Plan, is liable for benefits pursuant to the Plan's standard option. The case is remanded to the United States District Court for the Eastern District of Pennsylvania for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Just as in contract law, failure to satisfy a condition should be excused if the other party thwarted fulfillment of the condition. This is especially true here, where the Plan Administrator's failure to allow Epright to choose a health plan option contradicted the plain terms of the Plan and thus violated ERISA's exclusive purpose and prudence requirements