

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2005

# Ahearn v. Marsh McLennan Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ahearn v. Marsh McLennan Co" (2005). *2005 Decisions.* Paper 1480.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1480

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-1654

———————

JOSEPH M. AHEARN, individually and
on behalf of all others similarly situated,
Appellant

v.

MARSH & MCLENNAN COMPANIES, INC.; MARSH, INC;
FRANCIS N. BONSIGNORE, as plan administrator;
MARSH & MCLENNAN SUPPLEMENTAL RETIREMENT PLAN

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 02-cv-00875
District Judge:  The Honorable Jose L. Linares

———————

Argued:  February 7, 2005

———————

Before: BARRY, FUENTES, and BECKER, Circuit Judges

———————

(Opinion Filed: March 3, 2005)

———————


Noel C. Crowley, Esq. (Argued)
Crowley & Crowley
20 Park Place, Suite 206
Morristown, NJ  07960

Counsel for Appellant

Edward Cerasia, II, Esq. (Argued)
Proskauer Rose
One Newark Center, 18th Floor
Newark, NJ 07102
Counsel for Appellees

—————

OPINION

—————

**BARRY, Circuit Judge**

## I. BACKGROUND

Joseph Ahearn retired from his employment with Marsh & McLennan Companies, Inc.,[1] on December 1, 2000, at the age of 69. As a highly-compensated former employee, Ahearn was a participant in three separate retirement plans: the U.S. Retirement Plan,[2] the Benefit Equalization Plan, and the Supplemental Executive Compensation Program ("the SERP"). Only the SERP is at issue here, with Ahearn arguing, among other things, that the benefits he was (and is) entitled to receive were improperly computed. The District Court disagreed, as do we. We have jurisdiction under 28 U.S.C. § 1291.

### A. SERP Social Security Offset

The SERP is a so-called "top hat" pension plan under ERISA. A top hat plan is a

---

[1]Marsh & McLennan Supplemental Retirement Plan, Marsh & McLennan Companies, Inc., and Francis B. Bonsignore as plan administrator will be referred to collectively as "Marsh."

[2]The parties also refer to the U.S. Retirement Plan as the Basic Plan. Its formal title is the Marsh & McLennan Companies Retirement Plan.

"plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees." Goldstein v. Johnson & Johnson, 251 F.3d 433, 436 (3d Cir. 2001) (quoting Miller v. Eichleay Eng'rs, Inc., 886 F.2d 30, 34 n.8 (3d Cir. 1989)). Pursuant to Article 4 of the SERP, the benefits a participant receives under it are reduced by the "Social Security Offset" as defined in the SERP. The dispute in this case concerns the definition of "Social Security Offset," a definition found in Article 1, Section 1.21 of the SERP:

> 1.21 Social Security Offset
>
> 1.21.1 For a Participant who retires at age 65 or thereafter, the estimated monthly primary Social Security benefit to which he is entitled at such time of retirement under the Social Security Act as then in effect on the assumption that he was fully insured for such benefit, made proper application therefor, and does not disqualify himself from receipt of such benefit.
>
> 1.21.2 For a Participant who retires prior to age 65, the estimated monthly primary Social Security benefit to which he would have become entitled at age 65 under the Social Security Act as in effect on the day he terminates employment if he had remained in the employ of the Company until age 65 with Monthly Earnings equal to his rate of Monthly Earnings immediately prior to his termination of employment.

Joint Appendix (hereinafter "JA") 270.

The phrase "Social Security benefit" is not a defined term under the SERP.[3] The

_____

[3]Article 1 of the SERP provides that "[u]nless the context otherwise indicates, all capitalized terms used herein (other than terms defined herein) that are also used in the Basic Plan shall have the meanings set forth in the Basic Plan." JA 266. Neither "Social Security benefit" nor "primary Social Security benefit" are defined in the Basic Plan.

Social Security regulations provide that a retiree "may earn a credit for each month during the period beginning with the month you attain full retirement age . . . but do not receive an old-age benefit." 20 C.F.R. § 404.313(a). These credits are known as "Delayed Retirement Credits." Id. Although Ahearn reached full retirement age at 65, he did not begin receiving his Social Security benefits until age 69, when he retired. Therefore, he received four years' worth of Delayed Retirement Credits, and his Social Security benefits were correspondingly higher.

Marsh takes the position that the phrase "Social Security benefit" as used in § 1.21 of the SERP means the actual amount of benefits received by the retiree. Therefore, Marsh included the Delayed Retirement Credits as part of the Social Security Offset, and reduced Ahearn's overall SERP benefits accordingly. Ahearn, on the other hand, takes the position that because the SERP uses the term "primary Social Security benefit", this term should be understood to refer to the "Primary Insurance Amount" ("PIA") as used in the Social Security Regulations. The relevant regulation defines "Primary Insurance Amount" as "the basic figure we use to determine the monthly benefit amount payable to you and your family. For example, if you retire in the month you attain full retirement age . . . you will be entitled to a monthly benefit equal to your PIA." 20 C.F.R. § 404.201(a). Because the PIA does not change based on the age at which the retiree actually retires, Ahearn argues that the "primary Social Security benefit" under the SERP should similarly remain unchanged notwithstanding Ahearn's retirement at age 69.

4

**B.** **History of the Dispute**

In February, 2001, Ahearn expressed his dissatisfaction to Marsh concerning Marsh's calculation of the Social Security Offset of his SERP benefits. In response, Marsh obtained a legal opinion from the law firm of Sullivan & Cromwell, which interpreted the Social Security Offset in the SERP as equivalent to actual benefits received, including any Delayed Retirement Credits. Marsh forwarded this opinion letter to Ahearn in June, 2001. Ahearn subsequently filed a four-count complaint against Marsh alleging, in Count One, wrongful denial of benefits under ERISA; in Count Two, breach of fiduciary duty under ERISA; in Count Three, common law unjust enrichment; and in Count Four, violation of the ADEA. On February 9, 2004, the District Court granted Marsh's motion for summary judgment on Counts One, Two and Three of the Complaint, and granted Marsh's motion to dismiss Count Four. Ahearn appeals the District Court's disposition only as to Counts One and Four. Although we have considered Ahearn's various arguments as to each of those counts,[4] we will limit our discussion to what we consider to be the heart of Count One. We will affirm.

## II. DISCUSSION

Section 12 of the SERP provides as follows:

---

[4]Ahearn also argues that the plan administrator improperly delegated authority to Ms. Agnello and Mr. Sherman. In addition, Ahearn appeals from the rejection of an estoppel defense, the denial of additional discovery, the dismissal of Count Four because disparate treatment was not alleged, and the denial of leave to amend the complaint to allege disparate treatment. We find these arguments to be without merit.

12.1 Committee

12.1.1 The Program[5] shall be administered by the Administrative Committee appointed from time to time by [Marsh] . . . the Committee shall have the power and discretion to:
. . .

12.1.2 to [sic] interpret the Program, to resolve ambiguities, inconsistencies and omissions and to decide questions concerning the eligibility of any person to become a Participant or Plan Participant, such interpretations, resolutions and decisions to be final and conclusive on all persons;

JA 294-295.

We have set forth the framework for analyzing top hat pension plans:

[A] top hat plan is a unique animal under ERISA's provisions. These plans are intended to compensate only highly-paid executives, and the Department of Labor has expressed the view that such employees are in a strong bargaining position relative to their employers and thus do not require the same substantive protections that are necessary for other employees. See DOL Opin. Letter 90-14 A, 1990 WL 123933, at *1 (May 8, 1990). We have held that such plans are more akin to unilateral contracts than to the trust-like structure normally found in ERISA plans (internal citations omitted). Accordingly, top hat plans are not subject to any of ERISA's substantive provisions, including its requirements for vesting and funding (internal citations omitted).

Goldstein, 251 F.3d at 442.

In Goldstein, the contract explicitly vested the plan administrator with discretion to

---

[5]The SERP is also referred to as "the Program." JA 266.

6

interpret provisions of the plan. Under such circumstances, we noted that "[o]rdinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith -- a requirement that includes the duty to exercise the discretion reasonably." 251 F.3d at 444. Thus, "the question presented to the Court is not whether J&J's interpretation offers the best reading of the contract; rather, given the discretion granted to the Pension Committee, the question is whether the interpretation offered by J&J was reached in good faith." Id. at 445.

While Ahearn acknowledges the "good faith" standard established in Goldstein, he argues that Marsh's actions were unreasonable and in bad faith. In support of his argument, Ahearn cites to several pension documents provided by Marsh. The "Personal Benefit Statement" for the years 1998 through 2000 purport to show Ahearn's retirement benefits from the various Marsh retirement plans, including the SERP. The statements also included an "estimated primary social security" which the statements define as "the Primary Insurance Amount payable at age 65." JA 418, 420. Based on this definition, Ahearn argues that Marsh initially treated "primary Social Security benefit" as equal to PIA as defined under the Social Security Regulations. While the 1998 and 1999 statements show Ahearn's "estimated primary social security" as $14,604 and $14,603, respectively, the 2000 statement lists this amount as $19,584. Ahearn argues that the increase from 1999 to 2000 resulted from Marsh erroneously adding his Delayed Retirement Credit to his PIA. Thus, Ahearn contends that while the 1998 and 1999

7

statements accurately reflect his PIA and corresponding SERP amounts, the 2000 statement represents an "abrupt departure" from Marsh's prior practice, and demonstrates that Marsh was acting in bad faith in reducing his SERP benefits because of his increased Delayed Retirement Credits.

Not surprisingly, Marsh disputes Ahearn's interpretation of the relevant documents. Marsh cites to the Retirement Program worksheets for 1999 and 2000, which list Ahearn's "Estimated Social Security PIA" as $19,008 and $20,592, respectively. JA 456, 453. Marsh notes that it is the worksheets, rather than the Personal Benefit Statement or the Social Security Regulations, which actually determine the calculation of benefits under the SERP. Thus, although the amounts listed in the Personal Benefit Statement may differ from those in the worksheets, it is only the latter figures which are relevant for purposes of the SERP. Because the worksheets have always calculated the Social Security Offset based upon the actual amount of Social Security benefits a retiree receives, Marsh argues that its position on this issue has been both consistent and reasonable.

Ahearn's arguments are at least colorable, and if this were a straightforward breach of contract case, summary judgment might well have been premature. As noted above, however, the language of Section 12.1 of the SERP vests Marsh with discretion to interpret the SERP's provisions. Therefore, we must apply the deferential "good faith" standard set forth in Goldstein. Although Ahearn attempts to argue that this case is

analogous to other cases where a claimant has prevailed under this standard, the cases upon which he relies are different in important ways.

In Epright v. Envioronmental Resources Management, Inc., 81 F.3d 335 (3d Cir. 1996), an employee had been denied benefits under an ERISA health and welfare benefit plan on the ground that he was not a "full time employee," despite the fact that he "unquestionably met the definition of an active, full-time employee" as explicitly defined in the relevant documents. 81 F.3d at 338. Thus, even under the deferential standard accorded to plan administrators, we found in favor of the employee, noting that "[s]imply because [the employer] has consistently misinterpreted the term 'full-time employee' does not mean that such misinterpretation should be deemed part of the Plan and sanctioned as lawful." Id. at 340. See also, e.g., Wolf v. National Shopmen Pension Fund, 728 F.2d 182 (3d Cir. 1984) (plan administrator's interpretation is arbitrary and capricious when contrary to clear language of the plan provisions). While Ahearn argues that the language of Marsh's SERP is similarly clear-cut, in fact the disagreement here stems largely from the fact that the SERP plan, unlike the plan in Epright, does not define the term at issue, "primary Social Security benefit," and the parties have offered competing definitions. Where the definition of the relevant term is unclear, a court must defer to the administrator's interpretation of the plan, so long as that interpretation is reasonable.

Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995), is similarly unavailing. Moench involved a retirement plan which was invested in the employer's common stock.

9

Although the stock price dropped dramatically, the plan's administrators continued to invest solely in the company's stock, and argued that the language of the plan did not permit any other types of investments. In Moench, as here, the plan "gave the Committee unfettered discretion to interpret its terms; it further provided that the Committee's interpretations are conclusive." 62 F.3d at 566. Thus, we noted that "assuming that the Committee interpreted the plan. . .we will disturb its interpretation only if its reading of the plan documents was unreasonable." Id.

We noted, however, that the Committee's position was inconsistent with its own conduct, inasmuch as it had also voted to invest funds in money market instruments rather than company stock. Id. at 567. Under such circumstances, the Committee's interpretation of the plan documents could not be considered reasonable. Although Ahearn argues that the documents in this case demonstrate that Marsh similarly acted inconsistently with the position it has taken in this case, the relevant documents appear to be at least as supportive of Marsh's position.

Moreover, we held in Moench that "the record is devoid of any evidence that the Committee construed the plan at all." Id. at 567. Therefore, the deferential standard of review was inapplicable, and we instead applied *de novo* review. Here, however, unlike the plan administrators in Moench, Marsh clearly did attempt to construe the plan. As part of this process, it retained an outside law firm to provide an independent opinion interpreting the SERP provisions at issue. Indeed, it is difficult to imagine what more

Marsh could have done.[6]

As noted above, in order to prevail on Count One, Ahearn was required to demonstrate that Marsh acted unreasonably and in bad faith in denying his claim for SERP benefits. While the parties dispute the interpretation of the various documents in the record, Ahearn failed to present evidence sufficient to raise a genuine issue of material fact as to Marsh's good faith. See United States v. Dell'Aquilla, 150 F.3d 329, 332 n.2 (3d Cir. 1998). Summary judgment was properly granted on Count One.

## III.

The order of February 9, 2004 will be affirmed.

---

[6]It should be noted that the cases cited by Ahearn involved ERISA plans which were not "top hat" plans, and were thus analyzed under the "arbitrary and capricious" standard, rather than the "good faith standard." Although neither party explicitly addresses this issue, Ahearn appears to be arguing that the two standards are essentially identical. Indeed, the analysis in both Epright and Moench turned on whether or not the plan administrator's interpretation was reasonable. See Moench, 62 F.3d at 566; Epright, 81 F.3d at 340. We need not decide this issue, however, because even if we assume that the standards are essentially identical, the cases are distinguishable for the reasons discussed above.