*100 OPINION *
SLOVITER, Circuit Judge.
Appellants Robin Feeko, Nelida Maren-go, and Janet Rodgers brought claims for severance benefits under Pfizer’s Severance Plan on behalf of themselves and the proposed class pursuant to the Employee Retirement Income Security Act of 1974 (“ERISA”), specifically 29 U.S.C. § 1182(a)(1)(B). (App. at 303-09.) The District Court denied Appellants’ motion' for class certification on the ground that' Appellants had not met the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). (Appi at 4.) It granted Appellees’ motion for judgment on the administrative record or, in the alternative, for summary judgment, upholding Pfizer’s determination that Appellants had not experienced a termination of employment as defined by the Severance Plan. (App. at 5, 28-29.) It concurrently denied Appellants’ cross-motion for summary judgment and dismissed the case. (App. at 5.) Appellants Feeko, Marengo, and Rodgers appeal both orders. We will affirm the District Court’s order granting judgment on the administrative record and decline to reach the class certification issue.
I.
Because we write primarily for the benefit of the parties, we recount only the essential facts. In 2008, Wyeth, a pharmaceutical company, adopted the Special Transaction Severance Plan (“the Plan”) in anticipation of a corporate takeover bid by Pfizer, Inc. (App. at 287, 314-15.) The purpose of the Plan was “to provide certain employees in the United States and Puerto Rico with benefits that will assist them with their transition during and following a Change in Control.” App. at 41. An employee was eligible to receive severance benefits under the Plan “if, concurrently with or within the 24-month period following a Change in Control, the Employee has either (i) experienced an Involuntary Termination of Employment or (ii) resigned for Good Reason.” App. at 45. Excluded from the definition of “Termination of Employment” was any change in employment constituting a “transfer of employment to any successor company of the Company or (any of its affiliates).” App. at 44. The Plan documents do not define the phrase “successor company of the Company.” They do, however, contain a provision titled “Binding on Successors,” which states:
The obligations of the Company under the Plan shall be binding upon any organization which shall succeed to all or substantially all of the assets of the Company or otherwise be a successor of the Company by operation of law and the term “Company,” whenever used in the Plan, shall mean and include any such organization after the succession.
App. at 55.
The Plan specified that employees would be notified “at the time of Termination of Employment what benefits, if any, the Employee will receive under the Plan.” App. at 46, 53. Employees who disagreed with the assessment were permitted to “submit a written request for review to the [Administrative Committee],” a body appointed by the senior vice president of human resources and comprised of employees at the senior director level or higher. (App. at 53, 589-590.) The Plan granted the Administrative Committee “full discretion to determine eligibility to receive benefits.” App. at 46.
*101 Appellants Feeko, Marengo, and Rodgers are former Wyeth employees.[1] (App. at 287, 315.) Benchmark Federal Credit Union (“Benchmark”) is a company that provided credit services to Wyeth. (App. at 515.) The District Court found that Benchmark was a separate legal entity from Wyeth, and the parties do not dispute its finding. (App. at 18.) During their entire tenure with Wyeth and then Pfizer (“the Company”), Appellants “worked in the Benchmark Federal Credit Union,” but “were on the Pfizer payroll and participated in [the Company’s] employee benefit plans.” App. at 287, 315. It is unclear from the record exactly what Appellants’ day-to-day job responsibilities were.
On October 15, 2009, Pfizer completed its purchase of Wyeth, thereby assuming responsibility over the Plan as its new sponsor.[2] (App. at 287, 289, 315, 317.) On or about March 10, Appellants participated in a teleconference with Pfizer Human Resources personnel and the CEO of Benchmark during which they were informed that as of April 1, 2010, they would be employed by Benchmark, not the Company. (App. at 295, 320.) Appellants were required to fill out a Benchmark employment application and benefit forms. (App. at 606-023.) In anticipation of these changes, Pfizer entered into an “Employee Continuity Agreement” (“the Agreement”) with Benchmark, which provided that Appellants’ employment would be transferred from Pfizer to Benchmark with no interruption in employment. (App. at 87.) The Agreement specified that each employee would be paid “a base rate of pay ... that is at least equal to the last base rate of pay that such Transferring Employee earned as a Pfizer employee” and that the employees would continue to be covered by the Severance Plan.[3] App. at 88, 96-100. Thé Agreement also obligated Benchmark to provide certain benefits, including health and 401k (retirement) benefits. (App. at 88.) For purposes of benefits calculations, Appellants would be credited for service provided to Wyeth and Pfizer. (App. at 88.) The only change that Appellants have pointed to is that Benchmark did not continue their “Rule of 70” benefits[4] or contribute to their pension plans as the Company had done. (App. at 51.) On March 31,2010, Pfizer terminated Appellants’ employment; Benchmark hired them the next day. (App. at 287, 315.)
All three Appellants filed severance benefit claims within the designated filing period. (App. at 102-03, 148-49, 189-90.) They received a letter that their claims had been denied, stating:
Your employment was transferred to a successor employer, Benchmark Fed *102 eral Credit Union, effective April 1, 2010. You have not experienced an employment loss and have remained employed with Benchmark since that date of transfer. We understand that you have not experienced a reduction in your base rate of pay nor has your principle [sic] place of business been changed. As such, you have not experienced good cause for termination under the Plan.
App. at 106,152,193.
The denial letter apprised Appellants of their right to appeal the decision to the Administrative Committee, which they did. (App. at 112-14, 161-63, 198-200.) On appeal, the Committee denied their request, concluding:
Benchmark is a successor to Pfizer with respect to the outsourcing of its credit union work and, under the terms of the Employment Continuity Agreement, maintained continuous employment for you with the same terms and conditions as you had at Pfizer. These terms and conditions include the same severance opportunity as you had under the Plan should your employment with Benchmark terminate within a two-year period. Therefore, the Committee finds that you did not experience a Termination of Employment under the Plan and are not entitled to severance benefits. This interpretation of the Plan’s successor provision is consistent with Wyeth’s past practices going back to Project Impact where Wyeth denied severance to employees transferred to another entity as a result of a sale if, like here, the entity to which employees were transferred provided services back to Wyeth,
App. at 139, 184, 222.
Appellants filed suit in the United States District Court for the Eastern District of Pennsylvania, raising a claim for severance benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). (App. at 286-310.) Appellants moved for class certification, which the Court denied. (App. at 6-16, 376-87.) Appellees filed a motion for judgment on the administrative record, and Appellants cross-filed a motion for summary judgment. (App. at 474-508, 541-75.) The District Court denied Appellants’ motion and granted Appellees’ mo.tion for judgment on the administrative record. (App. at 28.) The District Court noted that the Continuity Agreement secured Appellants’ employment at Benchmark; that their job responsibilities, work location, salaries, and benefits at Benchmark were the same as at Pfizer; and that a contrary interpretation would “have guaranteed plaintiffs a windfall.” App. at 27-28. The Court concluded that, under the circumstances, it was not arbitrary and capricious for the Administrative Committee to conclude that Benchmark was a successor company of the Company insofar as Appellants’ employment was concerned.
II.
The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 because Appellants Feeko, Maren-go, and Rodgers appeal a final decision of the District Court. “We review a district court’s grant of summary judgment de novo, applying the same standard the district court applied.” Viera v. Life Ins. Co. of North Am., 642 F.3d 407, 413 (3d Cir.2011) (citation omitted). Appellants raise two issues on appeal. First, they argue that the District Court did not give enough weight to a number of procedural irregularities in the Committee’s decision and to several Committee members’ conflicts of interest. Second, they argue that the Committee’s decision was arbitrary and capricious. We address both issues.
*103 A.
When a plan administrator faces a conflict of interest in deciding whether to disburse benefits, courts should “consider [the conflict] as one of several factors in considering whether the administrator or the fiduciary abused its discretion.” Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir.2009) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 115, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). The weight given to such a conflict depends on a number of factors, “including, but not limited to ... [whether] an ... administrator has a history of biased claims administration” and whether “the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.” Glenn, 554 U.S. at 117, 128 S.Ct. 2343 (citations omitted).
Here, the District Court found several “inherent conflicts of interest.” App. at 25. First, the Administrative Committee was comprised of senior-level Pfizer employees who had a financial incentive to deny benefit claims to reduce company expenses. (App. at 25.) Moreover, the Court noted that three of the Committee members were involved in negotiating the Continuity Agreement, thereby predisposing them to deny benefits in order to protect the Agreement’s integrity. (App. at 25.) The District Court stated, “[t]he three members who helped negotiate the Continuity Agreement had significant incentive to have their interpretation of the Severance Plan upheld.” App. at 25. Although the Committee disclosed these conflicts, they ultimately decided against recusal, declaring that they had acted as Pfizer executives at the time but were acting as Plan fiduciaries when hearing benefits appeals. (App. at 24-25.) Pfizer took no steps to mitigate these conflicts. (App. at 25.)
The District Gourt concluded, “the Committee’s structural conflicts of interest remain troubling but not determinative.” App. at 29. Appellants claim that the District Court afforded the conflicts improper weight. We disagree. Conflicts of interest are merely one factor to be considered in determining the reasonableness of the Plan Administrator’s decision. Glenn, 554 U.S. at 117, 128 S.Ct. 2343 (“Any one factor will act as a tiebreaker when the other factors are closely balanced.”). While we recognize that the Committee was comprised of upper-level Pfizer employees who participated in negotiating the Continuity Agreement, we believe the District Court properly considered and factored each conflict of interest into its decision. Although conflicts play a role in determining the reasonableness of the denial of benefits, the ultimate question is whether the Committee’s interpretation of the Plan itself was reasonable. As further explained below, we find that it was.
B.
We turn our attention to the Administrative Committee’s decision. A plan administrator’s decision to deny benefits must be grounded in the plain language of the plan. Epright v. Envtl. Res. Mgmt., Inc., Health and Welfare Plan, 81 F.3d 335, 339 (3d Cir.1996) (citation omitted) (“A Plan Administrator’s] ... interpretation may not controvert the plain language of the document.”). If a plan grants its administrator discretion to “determine eligibility for benefits or to construe the terms of the plan,” we review the administrator’s decision under the arbitrary and capricious standard. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120-21 (3d Cir.2012) *104 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80.(1989)). “When a plan’s language is ambiguous and the administrator is authorized to interpret it; courts must defer to this interpretation unless it is arbitrary or capricious.” Id. (internal quotations omitted). “A term is ambiguous if it is subject to reasonable alternative interpretations.” Taylor v. Cont’l Group Change in Control Severance Pay Plan, 933 F.2d 1227, 1232 (3d Cir.1991) (citation omitted). Whether a plan term is ambiguous is a question of law we review de novo. In re Unisys Corp. Long-Term Disability Plan ERISA Litig., 97 F.3d 710, 715 (3d Cir.1996).
We agree with the District Court that the phrase “successor company of the Company or (any of its affiliates)” is ambiguous. The term “successor” is not defined in the Plan, and it is susceptible to more than one meaning. Id. at 1234 (finding term “successor” to be ambiguous); Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emps. & Bartenders Int’l Union, AFL-CIO, 417 U.S. 249, 262 n. 9, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974) (holding that context determines meaning of “successor”). Appellants disagree and point to Article VTII, § 8.3 of the Plan, titled “Binding on Successors.” App. at 55. It states:
The obligations of the Company under the Plan shall be binding upon any organization which shall succeed to all or substantially all of the assets of the Company or otherwise be a successor of the Company by operation of law and the term “Company,” whenever used in the Plan, shall mean and include any such organization after the succession.
App. at 55.
It is clear from the language of § 8.3, however, that it does not define “successor company of the- Company or (any of its affiliates).” Rather, § 8.3 governs the effect of a change in ownership of the Company on the continuity of the Plan.
Having found the Plan language ambiguous, we note that the Plan grants its administrator “full discretion to determine eligibility to receive benefits,” App. at 46. Therefore, we review the Administrative Committee’s decision under the arbitrary and capricious standard.[5] Orvosh v. Program of Group Ins. for Salaried Emps. of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir.2000) (standard of review depends on discretion afforded plan administrator). The following factors are used to analyze the reasonableness of a plan administrator’s interpretation of plan:
(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.
Howley v. Mellon Fin. Corp., 625 F.3d 788, 795 (3d Cir.2010) (alterations in original) (citation omitted).
The Administrative Committee denied Appellants’ claim for benefits on the ground that Benchmark was a successor company of the Company. Appellants ar *105 gue that Benchmark was not a successor. We disagree. The Committee’s interpretation appears to be consistent with the goals of the Plan, “to provide certain employees ... with benefits that will assist them with their transition during and following a Change in Control.” App. at 41. Appellants’ transition was relatively smooth. Although Pfizer has not contested that they were transferred from its employ to Benchmark, their responsibilities were the same, the physical location of their office remained the same, their salary and benefits remained largely unchanged, and there was no temporal gap in their employment. It would seem that the purpose of the Plan was to help employees who experience unemployment as a result of the change in control of Wyeth. That purpose would not have been served by granting Appellants’ claim for benefits. Not only were Appellants immediately employed, they experienced practically no change during the transition. Conversely, had the Company granted Appellants’ request for severance benefits, they would have received severance benefits on top of the salary and benefits they were receiving from Benchmark. Such a scenario would appear to contradict, not conform to, the goals of the Plan.
None of the remaining factors cited by Howley demonstrate that the Committee’s ruling was arbitrary or capricious. There is no language in the Plan that is rendered meaningless or internally inconsistent by the Committee’s interpretation of “successor.” Similarly, there is no clear plan language that conflicts with the Committee’s decision. As we have already noted, the term “successor” is ambiguous because there is nothing in the Plan that can be read as a definition of that term. Moreover, it does not appear that ERISA itself conflicts with the Committee’s decision.
Finally, Appellants point out several procedural irregularities in the Committee’s decision. The District Court found that the Committee incorrectly stated that “Wyeth’s on-site credit union” was “sold to [Benchmark]” and that Appellants were “transferred to Benchmark as part of the sale.” App. at 23 (alteration in original). In finding Appellants ineligible for benefits, the Committee noted that Benchmark was a “successor employer” and utilized the “same desk” rule. App. at 285. Neither of these terms appears in the Severance Plan. Although the Plan refers to “successor company,” there is no reference to “successor employer.” Finally, the Committee cited to past Wyeth benefits decisions regarding other plans and noted that its decision was “reasonable” and “consistent” with those decisions and Wyeth’s past practices. App. at 285. The Plan itself does not specify whether Plan Administrators may consult past decisions.
Procedural irregularities factor into the court’s review of an administrator’s decision insofar as they demonstrate a “reason to doubt its fiduciary neutrality.” Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir.2011) (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 165 (3d Cir.2007)). While the Committee cited several incorrect facts and used terminology not contained in the language of the Plan, these irregularities suggest harmless factual error as opposed to fundamental impropriety that calls into doubt the fiduciary neutrality of the Committee. As for the Committee’s reference to past benefits decisions, we do not believe such a practice is inappropriate so long as the Committee’s interpretation was reasonable and the focus of its inquiry was on the language of the Plan. That appears to be the case here.
In closing, we note that Appellants raise an alternative interpretation of “successor company of the Company or (any of its *106 affiliates)” that may very well be a reasonable interpretation of the Plan’s language. The relevant inquiry, however, is whether the Committee’s interpretation of the Plan was reasonable, regardless of whether we agree with it. We find that it was.
For the reasons set forth, we will affirm the Order of the District Court.

 This disposition is not an opinion of the full Court and pursuant to I.O.P. S.7 does- not constitute binding precedent.

. Appellant Feeko and Appellant Marengo began working at Wyeth in 1982 and 1983, respectively. (App. at 358, 369.) Appellant Rodgers worked at Wyeth from 1979 to 1989 and again starting in 1994. (App. at 373.).

. ERISA defines ‘‘plan sponsor” in relevant part as "the employer in the case of an employee benefit plan established or maintained by a single employer ... or ... in the case of a plan established or maintained by two or more employers or jointly by one or more employers .., the parties who establish or maintain the plan.” 29 U.S.C. § 1002 (2008).

. Employees were guaranteed the "last base rate of pay that such Transferring Employee[s] earned as a Pfizer employee.” App. at 88. This guarantee lasted for "the period beginning with the effective date of transfer and ending on October 15, 2011.” App. at 88.

.The parties explain, “The Rule of 70 benefit is an early retirement subsidy provided under the Wyeth Retirement Plan ... that is available to an employee who meets the eligibility requirements of the Retirement Plan and the Severance Plan, and who has a combined age and years of vesting service equal to or in excess of 70." App. at 294, 319.

. "We have described the deferential standard of review that we use in the ERISA context as both an arbitrary and capricious standard of review, and a review for abuse of discretion." Howley v. Mellon Fin. Corp., 625 F.3d 788, 793 n. 6 (3d Cir.2010) (internal quotation marks omitted).